Donald Wayne ENGELKING, Appellant,

v.

The STATE of Texas, Appellee.

No. 436–87.

Court of Criminal Appeals of Texas, En Banc.

April 20, 1988.

Stanley G. Schneider, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., and Winston E. Cochran, Jr. and Lee Coffee, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

OPINION ON APPELLANT'S PETITION
FOR DISCRETIONARY REVIEW

DUNCAN, Judge.

Appellant was convicted by a jury of the offense of possession of a controlled substance to-wit: methamphetamine, weighing at least 400 grams aggregate weight, including adulterants and dilutants. Article 4476–15, § 4.04(d)(2), V.A.C.S. Punishment was assessed by the trial court at 45 years confinement in the Texas Department of Corrections. On appeal, the appellant's conviction was affirmed by the First Court of Appeals in a published opinion. *Engelking v. State*, 727 S.W.2d 694 (Tex.App.— Houston [1st] 1987, pet. granted).

Appellant's petition for discretionary review was granted on two grounds for review. First, whether Article 4476–15, *supra*, is unconstitutionally void for vagueness due to its failure to define the terms "adulterants" and "dilutants." [1] Second, whether the evidence was sufficient to support the appellant's conviction for possessing over 400 grams of methamphetamine, including adulterants and dilutants. [2]

## I. FACTS

The appellant and a codefendant were arrested following the execution of a search warrant which resulted in the discovery of a laboratory designed to produce methamphetamine. Seized pursuant to the search warrant were three separate flasks or containers which contained different forms of methamphetamine. According to the State's witnesses, the first exhibit contained one gram of methamphetamine in crystalized form, and is not relevant to the issues in this case. The second exhibit contained 3,240 grams of liquid, approximately two grams of which was methamphetamine. The third exhibit contained 300 grams of liquid, .3 grams of which was methamphetamine. Nevertheless, the total weight of controlled substances was alleged to weigh 3,540.4 grams, including adulterants and dilutants.

The State called Henry Forjohn, a chemist with the Houston Police Department, to testify as an expert witness on the composition of controlled substances. At issue, was the composition of the liquid solutions in the second and third exhibits. According to Forjohn, each of these exhibits contained a very weak methamphetamine solution of .05% and .1%, respectively. Furthermore, according to Forjohn, an adulterant is any impurity in a substance, while a dilutant is a substance which makes another substance weaker. Moreover, he stated that an adulterant or dilutant is not necessarily a cutting agent. Forjohn described this working definition as his own common definition rather than a definition derived from technical writings.

Evidently, the use of this definition excused the witness from further analyzing the remainder of the solutions accompanying the methamphetamine. Forjohn did not describe the remainder of the contents of either exhibit as an adulterant or dilutant. In addition, Forjohn conceded that he did not know the composition of the remainder of the third exhibit. Although he indicated that phenyl two proponel (P2P) was present in the second exhibit, he did not indicate what percentage or weight of the solution was P2P. Forjohn testified that P2P is not a cutting agent. Instead, P2P is described as a reagent which is "something when mixed with another substance combines with that substance to produce a new substance." Finally, the witness believed that anyone drinking the solutions in the second and third exhibits would become sick.

The appellant called Mr. Arthur A. Simon, a narcotics analyst registered with both the Drug Enforcement Administration and the Texas Department of Public Safety. Simon tested only a sample extracted from the second exhibit which had been provided by the State. He testified that the solution consisted of a small amount of methamphetamine and P2P. He described P2P as a precursor. The second and third

1. Tex.R.App.Pro. 200(c)(2).

2. Tex.R.App.Pro. 200(c)(5).

exhibits were said to be consistent with the waste product that would be produced during the purification process of methamphetamine. Simon described a dilutant as a material added to a pharmaceutical with a specific intent of increasing the bulk of the final product. An adulterant was described as something that is added to a substance so as to misrepresent what it purports to be with the intent to defraud the user. These working definitions were allegedly based on several different texts. Simon testified that P2P was neither a dilutant nor an adulterant.

## II.

In the first ground of error, appellant contends that Article 4476–15, *supra,* is unconstitutionally void for vagueness due to its failure to define adulterants and dilutants. The court of appeals held that the statute gave ample notice of conduct forbidden in the alleged offense, *viz.,* possession of a controlled substance, methamphetamine. *Engelking v. State, supra,* at 696. Unfortunately, this does not specifically address the appellant's contentions, wherein the weight of adulterants and dilutants increased the punishment range for possession of methamphetamine from a maximum of twenty years and a $10,000 fine to a maximum of life and a fine not to exceed $100,000.

■ Appellant contends that Article 4476–15, *supra,* is void for vagueness in that it provides a criminal penalty for possession of a substance not set out in either the schedule of controlled substances or any penalty group. Clearly, a forbidden act must come within the prohibition of the statute and any doubt as to whether an offense has been committed should be resolved in favor of the accused. *Bruner v. State,* 463 S.W.2d 205 (Tex.Cr.App.1970).

■ A penal statute may be void for vagueness when it either forbids or requires the doing of an act in terms so vague that men of common intelligence must guess as to its meaning and differ as to its application. *Ely v. State,* 582 S.W.2d 416 (Tex.Cr.App.1979); *Ex parte Chernosky,* 153 Tex.Cr.R. 52, 217 S.W.2d 673 (1949). More specifically, a statute must give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden and the statute may not encourage arbitrary and erratic arrests and convictions. *Papachristou v. City of Jacksonville,* 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972).

■ However, a statute is not unconstitutionally vague merely because the words or terms used are not specifically defined. *Ahearn v. State,* 588 S.W.2d 327 (Tex.Cr.App.1979); *Passmore v. State,* 544 S.W.2d 399 (Tex.Cr.App.1977); *Powell v. State,* 538 S.W.2d 617 (Tex.Cr.App.1976). A statute which is arguably vague may be given constitutional clarity by applying the standard rules of statutory construction. *Floyd v. State,* 575 S.W.2d 21 (Tex.Cr.App. 1978), *appeal dis'm,* 442 U.S. 907, 99 S.Ct. 2817, 61 L.Ed.2d 272 (1979).

In *McGlothlin v. State,* 749 S.W.2d 856 (Tex.Cr.App.1988), we held that the terms "adulterant" and "dilutants" are compounds, substances or solutions added to the controlled substance with the intent to increase the bulk or quantity of the final product. *Id.,* at 858–59. Our holding resulted from the application of standard rules of statutory construction and interpretation. In doing so, we noted that although the Legislature intended to increase an offender's liability beyond the weight of the pure drug, this increase in liability exposure was not limitless.

■ Absent Art. 4476–15, § 4.07, V.A. C.S., if the appellant had been convicted of the possession of adulterants and dilutants only, perhaps the statute would be vague in that neither substance is set out within either the schedules or penalty groups of the Act.[3] This is not the situation, how-

---

3. The possession of adulterants and dilutants standing alone is, however, forbidden by Article 4476–15, § 4.07, V.A.C.S., which criminalizes the possession or delivery of drug paraphernalia.

The word "diluent" as used in subsection (15)(F) is synonymous with the word "dilutant." "Diluent" is defined as a "diluting agent." *Webster's Third New International Dictionary* (1976).

ever. The possession of adulterants and dilutants in this instance, constitutes a criminal offense only if the primary controlled substance is proven to exist. The appellant's contention that the failure of the statute to include a specific definition of the terms "adulterant" and "dilutent" operated to deny him fair notice of prohibited conduct strains credulity. It was clearly established by the appellant's own witness that the appellant was in possession of methamphetamine. The statute gives the appellant ample notice that the possession of methamphetamine is illegal and that the penalty for this conduct may be increased given the presence of adulterating and diluting agents. The appellant ignored a clear statutory proscription on the possession of methamphetamine and we therefore fail to see how he was harmed by the inclusion of adulterants and dilutants. The appellant's first ground for review is overruled.

### III.

The appellant also contends that the evidence was insufficient to support his conviction for possession over 400 grams of methamphetamine including adulterants and dilutants. There is ample evidence indicating that the appellant was in possession of between three and four grams of methamphetamine. The real question is whether the balance of the seized solutions may be added to the pure methamphetamine so as to exceed 400 grams. In other words, is the remainder of the solution properly includable as an adulterant or a dilutant?

■ As previously stated, an adulterant or dilutant is a compound, substance or solution added to the controlled substance with the intent to increase the bulk or quantity of the final product. *McGlothlin v. State, supra.* Taking the exhibits in inverse chronological order, neither the State nor the appellant's expert witness testified as to the composition of the remainder of the solution within the third exhibit, although both expert witnesses believed it to be similar to the second exhibit. Consequently, there is no evidence bearing on the question of whether or not the remainder of the third solution was an adulterant or a dilutant.

■ Turning to the larger second exhibit, the appellant's expert witness testified that the remainder of the solution contained aluminum hydroxide and phenylacetone, a precursor. Moreover, he indicated that the solution appeared to be waste water from a clean-up of methamphetamine oil. Furthermore, the probability of extracting any methamphetamine oil or methamphetamine from the solution within the confines of an unsophisticated lab environment would be slim to none. The witness further stated that it would be very unhealthy for an individual to inhale or inject a portion of this substance as P2P is a very corrosive material. Finally, the witness felt that neither aluminum hydroxide nor P2P is an adulterant or dilutant.

The State's expert witness testified that P2P was present in the second exhibit but he did not know what percentage or weight of the solution was P2P. He also testified that his identification of P2P was accidental, in that he was not purposefully seeking to identify any substance other than methamphetamine. As previously noted, the State's witness believed that an adulterant was any impurity in a substance and a dilutant was any substance that makes another substance weaker. Consequently, he believed the remainder of the solutions to be adulterants and dilutants. Unfortunately, the State's working definition of adulterant and dilutant is too broad.

As it stands, the record is devoid of any evidence that the remainder of the two solutions contained any substance intended to increase the bulk or quantity of the final product, methamphetamine.

Therefore, the judgments of the court of appeals and the trial court are reversed and the cause remanded to the trial court with instructions to enter a judgment of acquittal to the offense of possession of methamphetamine over 400 grams.

ONION, P.J., dissents to Part III.

DAVIS, J., not participating.

WHITE, J., concurs.