**Ramiro LOPEZ, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 13 87–049–CR.**

Court of Appeals of Texas, Corpus Christi.

Nov. 3, 1988.

Rehearing Denied Nov. 30, 1988.

See also, Tex.App., 741 S.W.2d 574.

Oscar B. McInnis, McAllen, for appellant.

Rene Guerra, Dist. Atty.'s Office, Edinburg, for appellee.

Before NYE, C.J., and DORSEY and KENNEDY, JJ.

## OPINION

DORSEY, Justice.

A jury found appellant, Ramiro Lopez, guilty of possession of a controlled substance and assessed punishment at five years' imprisonment plus a $2500.00 fine. Appellant presents four points of error on appeal. We affirm.

The evidence adduced at trial may be summarized as follows. On August 25, 1986, McAllen Police Officer Daniel Swearinger began a narcotics investigation after learning from a confidential informant that appellant was in possession of a moderate amount of cocaine at his residence. In order to verify the information, Swearinger surveilled appellant's home during the afternoon and evening hours of August 25, during which time he observed appellant and his girlfriend enter and leave several times. He then prepared an affidavit and search warrant, which was later approved and signed by Judge Howbert Steele.

Swearinger executed the warrant on Wednesday, August 27. Upon approaching appellant's residence, he and several officers of the Mission Police Department knocked on the front door and identified themselves. When no one responded, the officers conducted a forcible entry.

Upon searching the vacant house, Swearinger discovered a Marlboro cigarette pack on top of the dining room table; inside the pack was a plastic envelope containing a small amount of cocaine, and a double-edged razor blade that had been converted into a single-edged blade. Also found in the house were a scale, clear cellophane bags, a glass vial, a small plastic tube, and various other narcotics paraphernalia.

Department of Public Safety Chemist Joe Marchan testified that the seized narcotics consisted of 0.01 grams of cocaine, which would be categorized under "Penalty Group One" of the Controlled Substances Act. On cross-examination, Marchan stated that the cocaine, which he described as a "measurable trace," was adhered to a piece of tape at the corner of its plastic zip-lock container. He also said he had no knowledge of the purity of the substance.

Appellant asserts by his first point of error that the trial court erred in failing to suppress the seized cocaine because the warrant was issued upon a faulty affidavit. Appellant maintains the affidavit fails in two particulars: 1) there is not sufficient evidence to constitute probable cause for the issuance of the warrant; and 2) the information contained in the affidavit was false and the affiant officer knew it was false or would have known it was false but for the affiant officer's reckless disregard for the truth. In regard to the falsity of the information contained in the affidavit, appellant complains that the court erroneously refused to conduct an in-camera disclosure of the confidential informant's identity pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) and Tex.R.Crim.Evid. 508(c)(3) in order to determine if information in the affidavit was manufactured by the affiant.

The affidavit states, in pertinent part:

On 08/25/86 affiant received factual information from a confidential informant who has provided accurate and reliable information in the past. The information relayed by the informant is as follows:

1. That within the past thirty-six hours the confidential informant was present at the dwelling of suspected parties Ramiro Lopez and Ester Pauline Edwards.

2. That while present at the suspected dwelling the confidential informant observed the sale of Cocaine which was provided by suspected party Ramiro Lopez.

3. That during the narcotic transaction the confidential informant observed a moderate amount of cocaine which was being maintained by suspected parties Lopez and Edwards.

Affiant belives (sic) the information provided by the confidential informant to be true and accurate because the confidential informant has provided information in the past, information which resulted in the arrest of narcotic offenders and the seizure of narcotics. The information proveded (sic) by the confidential informant has always shown to be accurate and reliable. The affiant personally has knowledge of the suspected party Lopez and his involvement in narcotic sales. Affiant observed the suspected dwelling and found the discription (sic) of the dwelling and activity associated to the dwelling to be just as discribed (sic) by the confidential informant.

Appellant filed a Motion to Suppress Illegally Obtained Evidence in which he alleged that the Magistrate who issued the search warrant in question was "misled by information in the affidavit that the affiant officer knew was false or would have known was false except for his reckless disregard for the truth." Accompanying the motion was an affidavit of appellant which stated that he was at the searched premises for only a short while during the 36–hour period when the informant supposedly witnessed him selling drugs, and that when he was there, no one visited him. The trial court subsequently held a hearing on the motion.

The testimony offered at the hearing centered around the issue of whether the appellant was actually present at his home, as relayed by the informant, during the 36–hour period prior to the affiant's receipt of information on the morning of Monday, August 25, 1986.

Wesley McCaleb testified on direct examination that he had been acquainted with appellant for approximately two years. He was with appellant in Brownsville from 10:00 p.m. Saturday, August 23, until around 11:30 p.m., on Sunday, August 24, at which time appellant left Brownsville to return to his home in Mission. McCaleb also stated that appellant made no cocaine sales in his presence.

Appellant then took the stand and stated that he was at home on Saturday the 23rd but had no visitors. He and his girlfriend left their house at 3:00 p.m., ate dinner and went to McCaleb's house. He left Brownsville at midnight on Sunday the 24th, returned home and went straight to bed. He arose at 6:30 a.m., took his girlfriend to work at 7:00 a.m., went to work himself, and did not return home until 6:00 p.m. He visited with his girlfriend and her brother that evening but did not show them any cocaine.

The State then called Officer Swearinger to the stand. Swearinger attested that his confidential informant had, on six different occasions, given him information which proved to be correct and which led to arrests; hence, he had no reason to disbelieve the information set forth in the affidavit in question.

Swearinger further stated that after receiving the confidential tip on the morning of August 25, he immediately initiated surveillance in order to confirm appellant's occupancy of the suspected dwelling. He observed appellant, his girlfriend, and several other individuals "coming in and out" of the house throughout the afternoon and evening of Monday the 25th; he then saw appellant and his girlfriend leave the residence at about 6:30 p.m. Swearinger testified that appellant's assertion that he was not at home until 5:00 or 6:00 p.m. on August 25 was untrue.

At the conclusion of the hearing, the trial court denied appellant's motion to suppress the evidence as well as his request for an in camera disclosure of the confidential informant's identity.

In *Franks v. Delaware,* 438 U.S. 154, 156–57, 98 S.Ct. 2674, 2676–2677, 57 L.Ed.

2d 667 (1978), the United States Supreme Court stated:

[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

In *Taylor v. State,* 604 S.W.2d 175, 178 (Tex.Crim.App.1980), the Texas Court of Criminal Appeals emphasized that before suppression of seized evidence is warranted, the defendant must prove by a preponderance of the evidence that the *affiant* (and not the informant) knowingly or recklessly placed false assertions in the affidavit.

■ Our examination of the record from the *Franks* hearing does not indicate that appellant presented any evidence that Officer Swearinger knowingly or recklessly made false statements about appellant's presence in the suspected dwelling.

■ Appellant contends, however, that by refusing to require the disclosure of the informant's identity as provided for in Tex. R.Crim.Evid. 508(c)(3), the trial court effectively prevented him from proving that Swearinger manufactured the information in the affidavit.

Rule 508(c)(3) provides:

If information from an informer is relied upon to establish the legality of the means by which evidence was obtained *and the judge is not satisfied that the information was received from an in-*

*former reasonably believed to be reliable or credible, he may require the identity of the informer to be disclosed.* The judge shall, on request of the public entity, direct that the disclosure be made in camera. All counsel and parties concerned with the issue of legality shall be permitted to be present at every stage of proceedings under this subdivision except a disclosure in camera, at which no counsel or party shall be permitted to be present. If disclosure of the identity of the informer is made in camera, the record thereof shall be sealed and preserved to be made available to the appellate court in the event of an appeal, and the contents shall not otherwise be revealed without consent of the public entity. (emphasis ours).

Here, appellant's testimony that he was away from home from 3:00 p.m. on Saturday the 23rd until 6:00 p.m. on Monday the 25th was largely impeached by Officer Swearinger, who stated that he had observed appellant and his girlfriend at the searched residence during the afternoon of August 25. The trial court, as the trier of fact and sole judge of the credibility of witnesses at the hearing, was entitled to believe Swearinger's testimony and disbelieve appellant's. The court was also entitled, as a result, to cast doubt upon appellant's testimony concerning his whereabouts during the 36 hour period before Swearinger's surveillance began. Thus, the information given by the confidential informer was not shown to be false. Since the court was apparently satisfied that the confidential informant was reliable, we cannot say that it erred in refusing to require a disclosure of the informant's identity. Point one is overruled.

Appellant asserts by his third point of error that the trial court erred in permitting Officer Swearinger to testify about an incriminating statement made by appellant after the seizure but before his arrest and indictment.

At trial, Swearinger stated that on September 3, 1986, he saw appellant in the courthouse parking lot. As he was leaving, appellant "flagged" him and asked him to "come over here." When Swearinger approached, appellant indicated that he wanted to talk.

■ At that point in the examination, defense counsel took the officer on voir dire and established that there was an outstanding warrant for appellant's arrest at the time of the purported encounter. Counsel then objected to the introduction of any statements made by the appellant on the grounds that any interrogation conducted by Swearinger served to deny appellant his Sixth Amendment[1] right to counsel. The trial court made a preliminary ruling, sustaining the objection as to any interrogation by Swearinger but overruling the objection as to "any voluntary statement" made by appellant "other than through interrogation." After listening to Swearinger's summary of his conversation with appellant outside the presence of the jury, the court permitted Swearinger to describe the conversation during direct examination.

■ The officer stated that appellant first asked him why he was "picking on" appellant and his girlfriend; Swearinger responded that he was not "singling out" appellant and had nothing against him personally. During the ensuing dialogue, which lasted one and one-half hours, appellant, without provocation, admitted to possessing the cocaine which was seized at his residence. He also said that he saw nothing wrong with possessing the cocaine for personal use. He then repeated that the cocaine was his and did not belong to his girlfriend. The conversation continued into other topics including weather and car troubles. The encounter concluded when Officer Swearinger offered to help start appellant's car so that appellant could return home.

---

1. We note that the Sixth Amendment right to counsel does not attach until adversary judicial proceedings are initiated against a suspect. *Forte v. State,* 707 S.W.2d 89, 92 (Tex.Crim.App. 1986). The statements in question were made by appellant more than two months before his indictment on December 10, 1986. However, we will address appellant's points of error as if he had properly raised the issue under the Fifth Amendment of the Constitution.

According to Swearinger, appellant and his girlfriend voluntarily turned themselves in to the police two days later, on September 5, 1986.

It is well settled that an oral admission against interest or an oral confession of guilt which does not stem from *custodial* interrogation and is given voluntarily and without compulsion or persuasion is admissible against an accused. *Shiflet v. State*, 732 S.W.2d 622, 623 (Tex.Crim.App.1985); Tex.Code Crim.Proc.Ann. art. 38.22, § 5 (Vernon 1979). The Court in *Shiflet* further stated that "custody" occurs where a suspect is arrested, where he is physically deprived of his freedom of action (or led to believe he is being so deprived), or where there is probable cause to arrest and police do not tell the suspect he is free to leave. *Shiflet*, 732 S.W.2d at 629.

The record reflects that appellant was not under arrest at the time he made the statements in question. Nor did Officer Swearinger lead appellant to believe that he was restricted from leaving the scene at any time; in fact, Swearinger actually encouraged appellant's departure by helping him start his automobile. Furthermore, appellant does not contend, and the evidence does not reflect, that the officer interrogated appellant or in any way provoked him to make the statements. The trial court did not err in allowing the voluntary statements into evidence. Point of error three is overruled.

Point two states the evidence is insufficient to establish that appellant was in possession of cocaine at the time of the search. In reviewing the sufficiency of the evidence, an appellate court looks at all the evidence in the light most favorable to the verdict or judgment and determines whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Houston v. State*, 663 S.W.2d 455 (Tex.Crim.App.1984).

■ The State must prove two elements in order to establish the unlawful possession of a controlled substance: 1) that the accused exercised care, control, and management over the contraband, and 2) that the accused knew the matter was contraband. *McGoldrick v. State*, 682 S.W.2d 573, 578 (Tex.Crim.App.1985); *Campos v. State*, 716 S.W.2d 584, 585 (Tex.App.—Corpus Christi 1986, no pet.).

■ Here, it is undisputed that appellant was neither at home during the search nor in exclusive possession of the searched residence.[2] Hence, we cannot conclude that appellant knew of or controlled the contraband unless there are independent facts and circumstances which affirmatively link him to the contraband. *Hughes v. State*, 612 S.W.2d 581, 582 (Tex.Crim.App.1981).

We find that the incriminating statement which appellant made to Officer Swearinger to the effect that the cocaine belonged to him and not to his girlfriend constitutes a sufficient "link" to support the jury's finding of a knowing possession of a controlled substance. Point two is overruled.

■ Appellant contends by his fourth point of error that the trial court erred in overruling his motion for instructed verdict because the amount of cocaine (0.01 grams) discovered in his possession is insufficient to constitute a criminal offense.

At trial, DPS chemist Joe Marchan stated that although 0.01 grams constituted a measurable amount of cocaine, he was unsure of the purity of the substance.

Appellant argues that, since no purity tests were performed to determine the percentage of dilutants and adulterants, the State failed to prove that appellant possessed a measurable amount of *pure cocaine*, citing *McGlothlin v. State*, 749 S.W. 2d 856 (Tex.Crim.App.1988) and *Engelking v. State*, 750 S.W.2d 213 (Tex.Crim.App. 1988). Both *McGlothlin* and *Engelking* dealt with the definitions of adulterants and dilutants, and held that since the substances that were weighted with the seized methamphetamine were neither adultrants nor dilutants, they should be excluded from the weight of the changed controlled substance. Here, the chemist testified the

---

2. The affidavit supporting the warrant states that the "suspected place" is "controlled by both appellant and his girlfriend, Ester Pauline Edwards."

seized substance was cocaine, although he could not testify as to its purity because that type of test was not performed on the substance.

The minimum quantity of cocaine that will sustain a conviction for its possession is not specified in the Controlled Substances Act. Tex.Rev.Civ.Stat.Ann. art. 4476–15, § 4.04 (Vernon Supp.1988).

When the quantity of a substance possessed is so small that it cannot be quantitatively measured, independent evidence is necessary to show the defendant knew the substance was the charged contraband in order to uphold the conviction. *Daniels v. State*, 574 S.W.2d 127, 128 (Tex.Crim.App. 1978); *Reyes v. State*, 480 S.W.2d 373, 374 (Tex.Crim.App.1972). In *Reyes*, the defendant sold a substance which he represented to be heroin and his conviction was upheld even though only a trace of heroin was found in the seized contraband. His representation that the substance was heroin was held to be evidence of a knowing possession of the trace of heroin. *Reyes*, 480 S.W.2d at 374.

Here, in addition to the fact that the amount of cocaine seized was measurable, albeit minute, the presence of glass vials, a small plastic tube, a "converted" double-edged razor blade, and other narcotics paraphernalia constitutes circumstantial evidence of a "knowing" possession. Direct evidence also exists, as in *Reyes*, in the form of appellant's statements to Officer Swearinger that the cocaine belonged to him and that he saw nothing wrong with possessing cocaine for personal use. We overrule point of error four.

The judgment of the trial court is AFFIRMED.