**George Casper THORPE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–90–00661–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

July 23, 1992.

Robert J. Inger, Houston, for appellant.

John B. Holmes, Jr., Roger A. Haseman, John Malanga, Houston, for appellee.

Before WILSON, SAM BASS and O'CONNOR, JJ.

## OPINION ON MOTION FOR REHEARING

WILSON, Justice.

This is an appeal challenging the sufficiency of the evidence. George Casper Thorpe, the appellant, was found guilty of the felony offense of aggravated possession of methamphetamine. In addition, the jury found the allegations in the two enhancement paragraphs "true" and assessed punishment at 50–years confinement. We affirm by distinguishing the holdings in *McGlothlin v. State*[1] and *Engelking v. State*.[2]

The appellant has filed motion for rehearing, and the motion is overruled. However, we withdraw our earlier opinion issued on December 12, 1991, and issue this one in lieu thereof.

The appellant brings three separate points of error attacking the sufficiency of the evidence. In testing the sufficiency of the evidence in a criminal case, the reviewing court must ask "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 320, 99 S.Ct. 2781, 2790, 61 L.Ed.2d 560 (1979); *Chambers v. State*, 711 S.W.2d 240, 245 (Tex.Crim.App.1986).

### 1. Fact summary

Houston police narcotics officers received information from a confidential informant that the appellant was in possession of methamphetamine and that the appellant was going to make a delivery. Acting upon the information, the officers set up surveillance of an apartment building in Harris County.

The officers saw the appellant drive up to the location with a woman later identified as Charlene Hatfield. The appellant left the car and walked to the passenger side where Hatfield handed him a brown pouch. One of the officers drove past the appellant and saw him place the pouch underneath his left arm and also noticed a shoulder holster containing a silver colored weapon. The officers watched the appellant and Hatfield enter an apartment on the second floor of the building. At trial, Hatfield testified the pouch belonged to the appellant and, while inside the apartment, the appellant offered to give another man a "shot" of the methamphetamine.

As they left the apartment, the officers made their arrest. An officer testified that, during the arrest, they grabbed the appellant's arms and removed his gun from its holster. The officers found the pouch inside a jacket that Hatfield was carrying. The testimony varied with respect to how the pouch returned to Hatfield's possession. An officer testified that the appellant handed the pouch to Hatfield after they exited the apartment. Hatfield testified that the appellant placed the pouch in her jacket while in the apartment, without her knowledge.

1. *McGlothlin v. State*, 749 S.W.2d 856, 859 (Tex. Crim.App.1988).

2. *Engelking v. State*, 750 S.W.2d 213, 216 (Tex. Crim.App.1988).

The pouch contained two plastic bags of a powdery substance and one needle. Evidence and testimony presented to the jury revealed that one bag, State's exhibit seven, contained 29.6 grams of methamphetamine, "including any adulterants and dilutants." The other bag contained a noncontrolled substance.

2. More than 28 grams of methamphetamine

■ In point of error one, the appellant asserts there is insufficient evidence to show that he possessed more than 28 grams of methamphetamine, including adulterants and dilutants. The appellant argues that the State failed to identify all of the noncontrolled substances combined with the methamphetamine, whether they were in fact dilutants or adulterants, and whether the methamphetamine and any dilutants and adulterants exceeded 28 grams.

The indictment alleged that the methamphetamine weighed "more than 28 grams and less than 400 grams by aggregate weight, including any adulterants and dilutants." The State's chemist identified the substance as being 26.7 percent methamphetamine and having a net weight of 29.6 grams, including adulterants and dilutants. Neither party asked the chemist to identify the adulterants or dilutants or what other substances were present. The chemist's testimony is reproduced here:

Q [the State] Looking at the contents of State's Exhibit No. 7, what is the quantity of methamphetamine in State's Exhibit 7?

A [the chemist] The net weight of the powder was approximately 29.6 grams.

Q Would that 29.6 include any adulterants and dilutants?

A Yes, it does.

Q What is an "adulterant"?

A An "adulterant" is usually classed in the manufacturing process as an impurity that is carried along with the substance that it produces.

Q What is a dilutant "dilutant"?

A A cut. The purity of that particular substance.

Q Is 29.6 a quantity more than 28 grams but less than 400 grams?

A Yes, it is.

. . . .

Q What was the result [of the spectrophotometric analysis]?

A It was approximately 26.7 percent methamphetamine.

The Court of Criminal Appeals defined the terms "adulterant" and "dilutant" as compounds, substances, or solutions added to the controlled substance with the intent to increase the bulk or quantity of the final product. *McGlothlin v. State*, 749 S.W.2d 856, 859 (Tex.Crim.App.1988); *Engelking v. State*, 750 S.W.2d 213, 216 (Tex.Crim. App.1988). Both opinions define "adulterant" *and* "dilutant" as a cutting agent; both hold that neither an adulterant nor a dilutant may be defined as a foreign matter in the solution.

The appellant's argument focuses on the comparatively low percentage of methamphetamine in the mixture, just over 25 percent, and argues that the State proved that the methamphetamine was mixed with two substances: a dilutant (a cutting agent) and an adulterant (an impurity). Because the chemist did not testify what substances were present as adulterants and as dilutants, we are limited to the definitions the chemist provided in his testimony. The chemist testified that the powder contained "dilutants," which he defined as a substance used to "cut," and "adulterants," which he defined as an impurity created in the manufacturing process that is carried along with the substance that it produces.

In *McGlothlin*, the chemist testified that the water in the mix was an adulterant. In affirming the conviction, the court of appeals defined an adulterant as any impurity intentionally added in order to prepare the original substance or to lessen its strength. *McGlothlin v. State*, 705 S.W.2d 851, 865 (Tex.App.—Fort Worth), *rev'd*, 749 S.W.2d 856, 859 (Tex.Crim.App.1988). The Court of Criminal Appeals specifically rejected the court of appeals' definition of adulterant. *McGlothlin*, 749 S.W.2d at 858. The court held that a dilutant or adulterant

must be a substance that is used as a cutting agent. *Id.; Sloan v. State,* 750 S.W.2d 788, 789 (Tex.Crim.App.1988). The Court of Criminal Appeals reversed and ordered an acquittal.

In *Engelking,* the chemist testified the State's exhibits contained a weak solution of methamphetamine. The chemist defined an adulterant as any impurity in the substance, and a dilutant as a substance to make another substance weaker. *Engelking,* 750 S.W.2d at 214. The chemist testified that the solution contained a reagent, which is a substance that, when mixed with another substance, creates a third substance. *Id.* The Court of Criminal Appeals identified the question as whether the balance of the seized solutions may be added to the pure methamphetamine so as to exceed 400 grams. *Id.* at 216. The court concluded that the record was devoid of any evidence that the remainder of the solutions contained any substance *intended to increase the bulk or quantity of the final product, methamphetamine. Id.* The court reversed and ordered an acquittal.

The State argues that when the evidence shows the contraband is in a "ready-to-use" powder form, any remaining substances must necessarily be an adulterant or dilutant. We note in *McGlothlin,* the following:

> Obviously, adulteration within the delivery or trafficking context differs from the possession and manufacturing situation before us.

749 S.W.2d at 859 n. 4.

In both *McGlothlin* and *Engelking,* officers executing search warrants found laboratories constructed for the purpose of manufacturing controlled substances. Both defendants were found guilty of possession of a controlled substance in a "possession and manufacturing" context. Both cases found the evidence insufficient to sustain convictions of possession of certain amounts of controlled substance recovered from the respective defendants during stages of manufacture. Both cases distinguish substances that increase the bulk of the finished product from substances used in the manufacturing process.

The case before us arises in a delivery, trafficking, and/or possession context. Notwithstanding the fact that the chemist defined adulterant and dilutant in a way inconsistent with *McGlothlin* and *Engelking,* the evidence in the case permits a rational fact finder to conclude that the substances in the mix other than the pure methamphetamine were used to increase the bulk of the finished substance. The appellant was found in possession of the pouch containing the controlled substance, and Hatfield testified as to the appellant's intention with the substance, that is, to give a "shot" to the occupant of the apartment.

Viewing the evidence in a light most favorable to the verdict, the jury could properly believe the controlled substance was "ready to use." Therefore, the appellant is fairly held accountable for the full weight of the substance without doing violence to the previous holdings addressed, or the intention of the legislature. The concerns relative to holding a defendant to answer for substances used only in the manufacturing process are absent in the facts before us. Here, the appellant was selling, and/or using, the whole amount of the substance found in his possession, whereas in *McGlothlin* and *Engelking,* the defendants were in the process of manufacturing, but were charged with possession of quantities of substances that were not going to be in the end product.

In *McGlothlin* and *Engelking,* it is clear that the State relied on two types of substances to increase the bulk of the controlled substances to reach the amounts charged, a dilutant, which was a proper additive, and an adulterant, which by the State's definition, was not. Here, we hold the facts proven relative to the "ready to use" character of the substance possessed, independent of the chemist's definition, are sufficient in themselves to support the finding that the methamphetamine, plus the adulterants and dilutants, reached the level of 28 grams.

As authority, the appellant also cites *Reeves v. State*, 806 S.W.2d 540 (Tex.Crim. App.1990) and *Cawthon v. State*, No. 1170–90 (Tex.Crim.App., April 15, 1992) (not yet reported).

■ We find that *Reeves* does not stand for any principle inconsistent with our opinion. The *Cawthon* opinion has not been released for publication, thus, we decline to consider it as jurisprudence of this State. *See Yeager v. State*, 727 S.W.2d 280, 281 (Tex.Crim.App.1987); *Henderson v. State*, 822 S.W.2d 171, 173 (Tex.App.—Houston [1st Dist.] 1991, no pet.).[3]

Point of error one is overruled.

### 3. Possession of the contraband

■ In point of error two, the appellant alleges there is insufficient evidence to support his conviction for aggravated possession of a controlled substance. To prove the unlawful possession of a controlled substance, the State must show that defendant: (1) either singly or jointly, exercised care, custody, control, and management over the contraband; and (2) that he knew the matter possessed was contraband. *Hughes v. State*, 612 S.W.2d 581, 582 (Tex.Crim.App.1981); *Chavez v. State*, 769 S.W.2d 284, 288 (Tex.App.—Houston [1st Dist.] 1989, pet. ref'd). Such proof may be made by showing independent facts and circumstances that affirmatively link the accused to the contraband. *Hughes*, 612 S.W.2d at 582.

Without Hatfield's testimony, the appellant argues that there is not enough evidence to affirmatively link him to the contraband. The appellant asserts that Hatfield's testimony must be disregarded because the trial court did not charge the jury that accomplice witness testimony must be corroborated. Although the appellant did not request at trial an accomplice witness charge, the appellant contends that Hatfield was an "accomplice witness as a matter of law" and, therefore, the judge was under a duty to so instruct the jury. As authority, the appellant cites us to *Saunders v. State*, 794 S.W.2d 91 (Tex.App.—San Antonio 1990, no pet.).[4]

We disagree.

■ Hatfield's mere presence at the scene of the offense does not compel the conclusion that she is an accomplice witness. *Arney v. State*, 580 S.W.2d 836, 839 (Tex.Crim.App.1979). It is only when the evidence clearly shows that the witness is an accomplice witness as a matter of law that the trial court has the duty to so instruct the jury. *Allen v. State*, 461 S.W.2d 622, 625 (Tex.Crim.App.1970).

■ Assuming the trial court erred in refusing to instruct the jury that Hatfield was an "accomplice as a matter of law," we find the error in the charge not to be egregious. *Deblanc v. State*, 799 S.W.2d 701, 709 (Tex.Crim.App.1990).[5]

---

**3.** The Court of Criminal Appeals "elaborated" on their holding in *McGlothlin* and held that when adulterants and dilutants constitute a part of the weight utilized to increase punishment, the State must prove the following beyond a reasonable doubt: (1) the identity of the named illegal substance, (2) that the added remainder has not affected the chemical activity of the named substance, (3) that the remainder was added to the named illegal substance to increase bulk or quantity of the final product, (4) the weight of the illegal substance, including adulterants and/or dilutants. *Cawthon v. State*, — S.W.2d at ——–——. The *Cawthon* court reversed and ordered an acquittal after determining the record lacked any testimony regarding the unidentified portion.
Here, the chemist testified as to the nature of the remaining portion, but was not asked whether they affected the chemical activity of the product.

Because *Cawthon* has not been released as a final decision, we decline to take the same chemically analytical approach. In addition, the *Cawthon* decision did not resolve the issue in the *McGlothlin* footnote suggesting a different review of adulteration depending on the context of possession.

**4.** The *Saunders* court found that the witness, who was charged in the same indictment as the defendant, was an accomplice witness "as a matter of law." *Saunders*, 794 S.W.2d at 93. Here, Hatfield was not named in the indictment under which the appellant was convicted.

**5.** Because there was no objection to the trial court's charge, the appellant will obtain a reversal only if the error is so egregious and created such harm that he was denied a fair trial. *Deblanc*, 799 S.W.2d at 709.

Here, the testimony of the officers alone was sufficient to support the verdict. Narcotics officers acted on information the appellant was in possession of methamphetamine and that he was going to make a delivery. Further testimony, other than from Hatfield, placed the appellant in possession of the pouch before and after he exited the apartment.

We overrule point of error two.

4. Use of a deadly weapon

 In point of error three, the appellant argues there is insufficient evidence to support an affirmative finding that he used or exhibited a deadly weapon while allegedly possessing a controlled substance. The appellant contends that, although the trial court made an affirmative finding of a deadly weapon, it did not state whether it was used or exhibited.

In *Patterson v. State*, 769 S.W.2d 938, 941 (Tex.Crim.App.1989), the court states:

> Thus, "used ... a deadly weapon" during the commission of the offense means that the deadly weapon was employed or utilized in order to achieve its purpose. Whereas "exhibited a deadly weapon" means that the weapon was consciously shown or displayed during the commission of the offense.

The *Patterson* court also extended the meaning of "use" to include any employment of a deadly weapon, *even its simple possession, if such possession facilitates the associated felony. Id.*

Here, the officers saw the appellant wearing a shoulder holster and a firearm before going up to the apartment. Upon arrest, officers testified that they restrained the appellant's arms to keep him from removing his weapon. Hatfield testified that she saw the holstered gun when the appellant opened his jacket before going into the apartment.

In *Patterson*, the defendant was arrested by officers who were executing an arrest warrant. They found defendant in the living room, sitting on a sofa. As the officers approached defendant, he raised his hands, volunteered he had a gun, pointed to it, and said he was not going to use it.

The Court of Criminal Appeals held the jury could find that the appellant "used" the firearm during the commission of the felony, "in a sense that the firearm protected and facilitated appellant's care, custody, and management of the contraband." 769 S.W.2d at 942.

We overrule point of error three.