**George Casper THORPE, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 1228–92.

Court of Criminal Appeals of Texas, En Banc.

Oct. 27, 1993.

Robert J. Inger, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty. and Roger A. Haseman and John Malanga, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

*OPINION ON APPELLANT'S MOTION FOR REHEARING AFTER PETITION FOR DISCRETIONARY REVIEW REFUSED*

MALONEY, Judge.

A jury convicted appellant of possession of more than twenty-eight grams but less than four hundred grams of methamphetamine. Tex.Rev.Civ.Stat.Ann. art. 4476–15, §§ 4.02(b)(6); 4.04(a) & (c) (Vernon Supp.

1989).[1] The trial court assessed punishment, enhanced by two prior felony convictions, at fifty years imprisonment. *Id.* § 4.012(b)(1);[2] TEX.PENAL CODE ANN. § 12.42(d). The Court of Appeals affirmed the conviction upon appellant's motion for rehearing. *Thorpe v. State,* 834 S.W.2d 596 (Tex.App.—Houston [1st Dist.] 1992). On January 20, 1993, after originally refusing appellant's petition for discretionary review, we granted appellant's motion for rehearing to determine whether the Court of Appeals' opinion conflicts with decisions of this Court. TEX.R.APP.P. 200(c)(3). Appellant contends the evidence is insufficient to prove the controlled substance weighed more than twenty-eight grams. We will reverse the judgment of the Court of Appeals.

The following facts are quoted from the Court of Appeals' opinion:

> Houston police narcotics officers received information from a confidential informant that the appellant was in possession of methamphetamine and that the appellant was going to make a delivery. Acting upon the information, the officers set up surveillance of an apartment building in Harris County.
>
> The officers saw the appellant drive up to the location with a woman later identified as Charlene Hatfield. The appellant left the car and walked to the passenger side where Hatfield handed him a brown pouch. One of the officers drove past the appellant and saw him place the pouch underneath his left arm and also noticed a shoulder holster containing a silver colored weapon. The officers watched the appellant and Hatfield enter an apartment on the second floor of the building. At trial, Hatfield testified the pouch belonged to the appellant and, while inside the apartment, the appellant offered to give another man a "shot" of the methamphetamine.
>
> As they left the apartment, the officers made their arrest. An officer testified that, during the arrest, they grabbed the appellant's arms and removed his gun from its holster. The officers found the pouch inside a jacket that Hatfield was carrying. The testimony varied with respect to how the pouch returned to Hatfield's possession. An officer testified that the appellant handed the pouch to Hatfield after they exited the apartment. Hatfield testified that the appellant placed the pouch in her jacket while in the apartment, without her knowledge.
>
> The pouch contained two plastic bags of a powdery substance and one needle. Evidence and testimony presented to the jury revealed that one bag, State's exhibit seven, contained 29.6 grams of methamphetamine, "including any adulterants and dilutants." The other bag contained a noncontrolled substance.

*Thorpe,* 834 S.W.2d at 597–98.

The indictment alleged that on or about January 31, 1989, appellant "intentionally and knowingly possess[ed] a controlled substance, namely METHAMPHETAMINE, weighing more than 28 grams and less than 400 grams by aggregate weight, including any adulterants and dilutants." The jury charge mirrored the indictment; it authorized conviction upon the aggregate weight of the methamphetamine including any adulterants and dilutants.

The State's chemist testified at trial that State's exhibit number seven had a net weight of 29.6 grams including adulterants and dilutants, but that 26.7 percent [7.9032 grams] was methamphetamine.[3] The chemist testified that "[a]n adulterant is usually classed in the manufacturing process as an impurity that is carried along with the substance that it produces." And, he defined a

---

**1.** Now TEX.HEALTH & SAFETY CODE ANN. §§ 481.-102(6); 481.115(a) & (c). This offense occurred January 31, 1989, seven months before the Texas Controlled Substances Act's codification in the Health and Safety Code, effective September 1, 1989.

**2.** Now TEX.HEALTH & SAFETY CODE ANN. § 481.-107(b).

**3.** The State's chemist did not testify as to the grammolecular weight of the methamphetamine without any adulterants and dilutants; however, 26.7 percent of 29.6 grams is 7.9032 grams. *See Cawthon v. State,* 849 S.W.2d 346, 347 n. 2 (Tex.Crim.App.1992).

dilutant as "[a] cut. The purity of that particular substance."

This Court has defined adulterants and dilutants as "compounds, substances or solutions added to the controlled substance with the intent to increase the bulk of the product [or] increase the quantity of the final product 'without affecting its activity.' " *McGlothlin v. State*, 749 S.W.2d 856, 860 (Tex.Crim.App. 1988); *accord Engelking v. State*, 750 S.W.2d 213, 215 (Tex.Crim.App.1988). "The addition of adulterants and dilutants to the weight of the controlled substances for purposes of determining punishment, emphasizes their function as a substance which increases the quantity of a drug rather than the quality." *McGlothlin*, 749 S.W.2d at 860. Thus, "[i]f the added substance changes the [named illegal substance's] chemical activity, it is not an adulterant or dilutant, even if it does increase the bulk or quantity of the product." *Cawthon v. State*, 849 S.W.2d 346, 348 (Tex.Crim. App.1992).

The First Court of Appeals noted that the chemist's definition of adulterants and dilutants did not comport with *McGlothlin* or *Engelking*, but distinguished *McGlothlin* and *Engelking* as manufacturing cases. *Thorpe*, 834 S.W.2d at 599. The Court of Appeals reasoned "[t]he concerns relative to holding a defendant to answer for substances used only in the manufacturing process are absent in the facts before us." *Id.* While it is true that *McGlothlin* and *Engelking* involved the manufacturing process[4] and the case before us involves possession of a final product, this Court has not defined adulterants and dilutants differently for possession cases. *See Cawthon* (possession with intent to deliver amphetamine). We have stated:

> [W]hen adulterants and dilutants constitute a part of the weight utilized to increase punishment, the State must prove the following beyond a reasonable doubt: (1) the identity of the named illegal substance, (2) that the added remainder (adul-terants and/or dilutants) has not affected the chemical activity of the named illegal substance, (3) that the remainder (adulterants and/or dilutants) was added to the named illegal substance with the intent to increase the bulk or quantity of the final product, (4) the weight of the illegal substance, including any adulterants and/or dilutants.

*Cawthon*, 849 S.W.2d at 348–49.[5]

In *Cawthon*, the appellant was charged with possession with intent to deliver between twenty-eight and four hundred grams of amphetamine. The seized substance weighed 128.76 grams. The State proved 25.752 grams of the substance was amphetamine, but because the State failed to prove that the remainder was added to the amphetamine with the intent to increase the bulk or quantity of the final product without affecting the amphetamine's chemical activity, the conviction was reversed.

In this case, the State charged appellant with possession of more than twenty-eight grams of methamphetamine. The State was required therefore to prove either that more than twenty-eight grams of the entire seized substance was methamphetamine or that the portion of the seized substance that was methamphetamine weighed less than twenty-eight grams and the remainder was added with the intent to increase the quantity of the final product without affecting the methamphetamine's chemical activity. *See McGlothlin*. The State proved 7.9032 grams of State's exhibit number seven was methamphetamine,[6] but failed to prove that the remainder was added to the methamphetamine with the intent to increase the bulk or quantity of the final product without affecting the chemical activity of the methamphetamine. Without this evidence, we cannot say that the remainder was an adulterant or dilutant. Despite having indicted appellant for possession of more than twenty-eight grams of

---

**4.** In *McGlothlin* and *Engelking*, the appellants were charged with possession of amphetamine and methamphetamine, respectively. However, both cases arose out of a manufacturing context, and unlike here, those appellants could have been charged with manufacture or attempted manufacture of those controlled substances.

**5.** Because *Cawthon* was on rehearing before this Court and therefore not final when the Court of Appeals decided this case, the Court of Appeals declined to follow it. *Thorpe*, 834 S.W.2d at 600.

**6.** *See supra* footnote 3.

methamphetamine, the State proved possession of less than eight grams of methamphetamine. Therefore, we reverse the judgment of the Court of Appeals and remand this cause to the trial court with instructions to enter a judgment of acquittal.[7]

MEYERS, J., concurs in the result.

McCORMICK, P.J., and OVERSTREET, J., dissent.

CAMPBELL, Judge, dissenting.

Appellant's callous disregard for the Rules of Appellate Procedure is exceeded only by that of the majority. Appellant's original petition for discretionary review filed with this Court was not in compliance with Tex. R.App.Pro. 202(d)(8) which states that when a petition for discretionary review is filed with this Court a copy of the opinion by the court of appeals "whose decision is sought to be reviewed *shall* be included." (emphasis added). Appellant did not attach a copy of the Court of Appeals' opinion, and subsequently his petition was refused.

Appellant thereafter filed a motion for rehearing in which he states that he "cannot deny the plain interpretation of [Rule 202(d)(8)]" which requires that he submit a copy of the Court of Appeals' opinion with his original petition for discretionary review. Appellant was apparently unaware of the rule. Appellant attached the requisite number of copies of the Court of Appeals' opinion to his motion, and requested this Court review his original petition. Although appellant failed to certify that his motion was limited to "intervening circumstances of substantial and controlling effect" as required by Tex.R.App.P. 230(b), a majority of this Court has chosen to carve out an exception to the Rule for *this* appellant because his petition has merit. I dissent because the Rules of Appellate Procedure are mandatory, and *this* appellant should not be treated any differently than the thousands of other petitioners who are required to follow the same rules in

order to get their petition before this Court for review. The Rules do not provide that compliance is mandatory, "unless your case has merit and then the Court of Criminal Appeals will consider it anyway." However, today the majority of this Court has condoned *this* applicant's repeated failure to comply with the rules.

---

7. The 73rd legislature recently defined an adulterant or dilutant as "any material that increases the bulk or quantity of a controlled substance, regardless of its effect on the chemical activity of the controlled substance." Act of May 31, 1993, S.B. 1067, art. 2, § 2.01, 73rd Leg., R.S. (to be codified as Tex Health and Safety Code Ann. § 481.002(49) (Vernon Supp.1994)). Because this change only affects offenses occurring on or after September 1, 1994, we adhere to our holding in *Cawthon*.