**B. R. RINGER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 56096.**

Court of Criminal Appeals of Texas, Panel No. 1.

Jan. 31, 1979.

712

Marvin O. Teague, Houston, for appellant.

Carol S. Vance, Dist. Atty., Clyde F. DeWitt, III, and John B. Holmes, Jr., Asst. Dist. Attys., Houston, for the State.

Before ONION, P. J., and PHILLIPS and TOM G. DAVIS, JJ.

OPINION

ONION, Presiding Judge.

This is an appeal from a conviction for aggravated promotion of prostitution; punishment is imprisonment for five (5) years and a fine of $5,000, probated.

Appellant has set forth twenty-two grounds of error in which he complains that: (1) the indictment is defective; (2) the evidence is insufficient to sustain the conviction; (3) hearsay evidence was erroneously admitted; (4) the court erred in refusing to charge the jury on the law of circumstantial evidence; (5) the court's charge did not correctly apply the standard of reasonable doubt; and (6) the judgment does not conform to the verdict.

The Venetian Spa was owned by the Crestmont Corporation, of which appellant was an incorporator.

M_____ G_____ J_____ and E_____ F_____ were arrested and charged with prostitution but were given immunity after they agreed to testify for the State. M_____ G_____ J_____ testified that she was hired by appellant to work as a masseuse at the Venetian Spa. M_____ G_____ J_____ was told by appellant that she could give "locals" to (masturbate) customers who became sexually aroused during the massage. Appellant told her that the customers were to be given locals on every massage, regardless of the cost, and that this "relief" was to be a part of the massage. During the two months that M_____ G_____ J_____ worked at the spa, there were only one or two customers to whom she did not give locals. Appellant also told her when she was hired that giving locals was not a criminal offense, and that nurses were allowed to give locals in hospitals. Appellant and M_____ G_____ J_____ entered into an agreement to divide equally the proceeds from massages given by M_____ G_____ J_____. Appellant stopped at the Venetian Spa "periodically" to pick up money and receipts. After M_____ G_____ J_____ and E_____ F_____ were arrested, a meeting was held at which appellant told M_____ G_____ J_____ and several other masseuses at the spa of a new policy regarding the giving of locals. The new policy was that the customer was to be told that the massage was over and that if he wanted relief, it would be provided at no extra charge.

E_____ F_____ testified to substantially the same facts as M_____ G_____ J_____. E_____ F_____ testified that her agreement with appellant provided that

she was to receive forty per cent of the proceeds from massages given by her. She also testified that appellant had told her she was required to give locals as a condition of employment at the spa. If she were arrested, a lawyer and bondsman would be provided for her, but she was not to give a statement or testify.

Ralph Derrick, a private citizen who performed undercover investigative work for the Harris County Sheriff's Department, testified that he visited the Venetian Spa twice. On both occasions, he paid the receptionist $20 for a forty-five minute massage. Both times, he removed his clothes and was massaged for approximately thirty to forty minutes; the masseuse then gave him a local. He did not request a local on either occasion, nor did the masseuse ask if he wanted one. The first time he visited the spa, he stayed in the massage room for approximately forty minutes; the second time, approximately forty-five minutes. On both occasions that he was given locals, Derrick ejaculated and received sexual gratification as a result thereof. He identified M_____ G_____ J_____ and E_____ F_____ as the masseuses who gave him locals.

Charles McCreary and Charles Edwards both testified that they had visited the spa. They paid the receptionist and were given massages that culminated in locals which they did not request. Edwards testified that he also had received a massage at the spa which did not include a local.

The indictment in the instant case alleged that appellant:

". . . on or about May 14, 1974, did . . . knowingly own and invest in and finance and control and supervise and manage a prostitution enterprise that uses more than one prostitute, namely E_____ F_____ and M_____ G_____ J_____, at a location in Harris County, Texas, known as the Venetian Spa."

■ Appellant filed two motions to dismiss the indictment, both of which were overruled by the court. On appeal, appellant complains that the language of the indictment is so vague and indefinite that he cannot plead the judgment given upon in bar of a prosecution for the same offense. See Article 21.04, V.A.C.C.P. Specifically, appellant argues that the term "prostitution enterprise" does not enable a person of common understanding to know what is meant nor does it give him notice of the particular offense with which he is charged. See Article 21.11, V.A.C.C.P. Although the term "prostitution enterprise" is not defined in the Penal Code, it has been defined by this court as meaning "a plan or design for a venture or undertaking in which two or more persons offer to, agree to, or engage in sexual conduct in return for a fee payable to them." *Taylor v. State*, 548 S.W.2d 723 (Tex.Cr.App.1977).

Appellant argues that since the *Taylor* case was not decided until he was convicted, he was unable to avail himself of the above definition. Be that as it may, we cannot agree that the indictment in the instant case is defective. The term "prostitution" is defined in the Penal Code [V.T.C.A., Penal Code, §§ 43.01, 43.02(a)(1)], and the word "enterprise" is one of common usage. We hold that the allegations of the indictment are set forth with sufficient certainty to give appellant notice of the offense with which he was charged.

■ Appellant also asserts that the indictment is defective because it alleges that he owned, invested in, financed, controlled, supervised and managed a prostitution enterprise that used "more than one prostitute," whereas it is provided by statute that a person commits the offense of aggravated promotion of prostitution if he owns, invests in, finances, controls, supervises or manages a prostitution enterprise that uses "two or more prostitutes." V.T.C.A., Penal Code, § 43.04. Because of this dissimilarity of language, appellant argues that the indictment does not state an offense against the laws of this state; alternatively, he argues that the indictment alleges only the offense of promotion of prostitution [V.T.C.A., Penal Code, § 43.03], which is a misdemeanor offense over which the district court did not have jurisdiction.

■ To support this argument, appellant maintains that the phrase "more than one prostitute" in the indictment means "one prostitute." We cannot agree with this imaginative interpretation. There is no rule of logic, grammar or statutory construction according to which "more than one" means "one." The phrases "more than one prostitute" and "two or more prostitutes" mean precisely the same thing, and the indictment sufficiently alleges the offense of aggravated promotion of prostitution.

■ Appellant also urges that the court's charge, which employed the phrase "two or more prostitutes," is erroneous for instructing the jury as to factual allegations not contained in the indictment. This contention is, for the reasons discussed, supra, wholly without merit.

Appellant urges that the evidence is insufficient to sustain the conviction. He argues that there is no evidence that acts of prostitution were committed at the Venetian Spa or that the Venetian Spa was a "prostitution enterprise." Appellant also argues that it was not proved that he knew acts of prostitution were being committed at the Venetian Spa.

In support of this contention, appellant points out that the fees for the massages were paid to the receptionist and that no money exchanged hands between the customers and the masseuses. It was uncontroverted, however, that for each massage a masseuse performed she would receive either forty per cent or fifty per cent of the amount paid the receptionist. It also was shown that each customer at the spa would receive a local as part of the massage for which he paid. Derrick testified that on both occasions when he received locals, they were performed on him during the forty-five minute period for which he paid $20 to be massaged. It also was shown that each customer was given a local whether or not he requested it, and that the masseuse would perform the local, without inquiring as to whether the customer desired it, as part of the massage.

■ V.T.C.A., Penal Code, § 43.02(a)(1), as in effect at the time of the offense, provided that a person commits the offense of prostitution if he "offers to engage, agrees to engage, or engages in sexual conduct in return for a fee payable to the actor." We find the evidence sufficient to prove M_____ G_____ J_____ and E_____ F_____ were guilty of prostitution by engaging in sexual conduct in return for fees payable to them. We also find that the evidence is sufficient to prove the Venetian Spa was a "prostitution enterprise" as that term has been defined by this court. See *Taylor v. State*, supra.

■ Both M_____ G_____ J_____ and E_____ F_____ testified that appellant instructed them that locals were to be given as part of each massage. M_____ G_____ J_____ further testified that appellant instructed the masseuses, after M_____ G_____ J_____ and E_____ F_____ were arrested, that a new policy concerning the giving of locals was to be instituted. We hold that the evidence is sufficient to prove appellant knew M_____ G_____ J_____ and E_____ F_____ had committed acts of prostitution at the Venetian Spa, and the evidence is therefore sufficient to sustain the conviction.

■ A copy of what purported to be E_____ F_____'s employment contract was admitted in evidence. E_____ F_____ denied that the signature on the agreement was hers. The State then introduced a copy of a statement given by E_____ F_____ after she was arrested, for the limited purpose of comparing the signature thereon with the signature on the employment contract. The statement was admitted over appellant's objection that it was hearsay, and both the statement and the contract were examined by the jury so that the signatures could be compared. The State subsequently moved that all of the statement except E_____ F_____'s signature be excised, and the motion was granted. The court also instructed the jury that the statement as originally admitted was to be considered for the sole purpose of showing E_____ F_____'s alleged signature.

The statement as originally admitted is in the record before us. It contains nothing that was not testified to by E——— F——— in court. Moreover, the statement was not hearsay because it was not offered to prove the truth of the matters asserted therein. See *Huff v. State*, 560 S.W.2d 652 (Tex.Cr.App.1978). We hold that admission in evidence of the entire statement by E——— F——— was harmless error. See *Huff v. State*, supra; *Myre v. State*, 545 S.W.2d 820 (Tex.Cr.App.1977); *Fazzino v. State*, 531 S.W.2d 818 (Tex.Cr.App.1976).

■ Appellant also complains that other hearsay was erroneously admitted in evidence. Shirley Brandt, a former employee of the Venetian Spa, testified that appellant never instructed her to give locals to customers. She also testified that the spa's policy on giving locals was not changed after M——— G——— J——— and E——— F——— were arrested. To rebut Brandt's testimony, the State called another former employee of the spa, Kathrine Wright. Wright testified as follows regarding the change in policy:

"Shirley Brandt told us she had gotten a telephone call, and we were from then on before we ever gave any massage on a massage to tell them that the massage was complete, and ask them if they would like us to relieve them, and there would be no extra charge for this.

"Q  All right.  What do you mean by relieve?

"A  Your masturbation word.

"Q  All right.  Who was the phone call from?  Who did she say the phone call was from?

"A  From Mr. Ringer."

■ The proper predicate for Wright's testimony was laid when the State asked Brandt if she had made such a statement and she denied doing so. See *Thumann v. State*, 466 S.W.2d 738 (Tex.Cr.App.1971); *Marshall v. State*, 384 S.W.2d 893 (Tex.Cr. App.1964). Wright's testimony of a prior inconsistent statement by Brandt was permissible for impeachment. See *Lafoon v. State*, 543 S.W.2d 617 (Tex.Cr.App.1976); *Thrash v. State*, 500 S.W.2d 834 (Tex.Cr.

App.1973); *Bellah v. State*, 415 S.W.2d 418 (Tex.Cr.App.1967).

■ Appellant contends that the court erred in refusing to instruct the jury on the law of circumstantial evidence. He argues that there is no direct evidence of appellant's knowledge that the Venetian Spa was a prostitution enterprise. We do not agree. Appellant's instructions to M——— G——— J——— and E——— F——— regarding locals constituted direct evidence of appellant's knowledge. The court properly refused to instruct the jury on the law of circumstantial evidence.

■ Appellant asserts that the court erred in refusing six requested charges. The effect of these requested charges was to require the jury to find appellant not guilty unless it found that he owned *and* invested in *and* financed *and* controlled *and* supervised *and* managed a prostitution enterprise. The court's charge properly allowed the jury to convict appellant if it found that he was guilty of any of the six above means of participating in a prostitution enterprise. See *Cowan v. State*, 562 S.W.2d 236 (Tex.Cr.App.1978). The court properly refused appellant's requested instructions.

Appellant's final contention is that the judgment does not conform to the verdict. The jury recommended that appellant be granted probation for his *term of imprisonment* and his fine, but the judgment does not so reflect. The judgment is reformed to show that both the term of imprisonment for five years and the fine of $5,000 are probated.

As reformed, the judgment is affirmed.