James **SMITHWICK**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 3–87–241–CR.

Court of Appeals of Texas,
Austin.

Nov. 16, 1988.

Rehearing Denied Jan. 11, 1989.

Laird Palmer, Austin, for appellant.

Ronald Earle, Dist. Atty., Robert M. Smith, Asst. Dist. Atty., Austin, for appellee.

Before SHANNON, C.J., and CARROLL and JONES, JJ.

CARROLL, Justice.

This appeal arises out of the operation and management of the "French Quarter" and "Burlesque," two so-called nude modeling studios in Travis County. A jury found Smithwick guilty of aggravated promotion of prostitution under Tex.Pen.Code Ann. § 43.04 (1974). The trial court assessed punishment at a $5,000 fine and ten years imprisonment, probated. We will affirm the judgment of the trial court.

In three points of error, Smithwick challenges the sufficiency of the evidence to support his conviction; accuses the trial court of error for refusing to submit a requested instruction to the jury; and attacks § 43.04 of the Penal Code as unconstitutionally vague for failing to define the term "prostitute."

In determining the sufficiency of the evidence to support a criminal conviction, we must view the evidence in the light most favorable to the verdict and then determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. State*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Carlsen v. State*, 654 S.W.2d 444, 448 (Tex.Cr.App.1983) (opinion on rehearing). A jury can properly convict a defendant under § 43.04 if it finds he is guilty of any one of the six means of participating in a prostitution enterprise: owning, investing in, financing, controlling, supervising, or managing. *Ringer v. State*, 577 S.W.2d 711, 714, 716 (Tex.Cr. App.1979).

At trial, the State established in some detail that Austin Policemen, acting undercover, had gone to the French Quarter and the Burlesque posing as customers and ultimately arrested four of the "models" for prostitution.

■ The officers apparently took great pains to avoid detection. According to their testimony, in order to be accepted as customers, they were first forced to completely undress. Then they discussed with the models at length and in plain terms the special services available in addition to the modeling sessions as well as the amount of the "tip" required for the special services. The policemen's testimony constituted over-

whelming evidence of a prostitution enterprise.

There is also ample evidence of Smithwick's involvement in that enterprise. Four of the women testified at trial. According to the record, Smithwick interviewed prospective employees, advised them to use birth control, advised them about prostitution laws, advised them about tips, provided towels and condoms, charged the women $10.00 per week each to pay for advertisements in the newspaper, and personally initiated one of the women into the business. We hold this is sufficient evidence that Smithwick "controlled, supervised, or managed" the enterprise.

■ At the conclusion of the evidence, Smithwick asked the trial court to submit to the jury the definition of "prostitution enterprise" found in an explanatory paragraph in *Floyd v. State,* 575 S.W.2d 21 (Tex.Cr.App.1978), *appeal dismissed,* 442 U.S. 907, 99 S.Ct. 2817, 61 L.Ed.2d 272 (1979). The trial court refused, and instead correctly submitted a definition taken verbatim from *Taylor v. State,* 548 S.W.2d 723 (Tex.Cr.App.1977). No error is shown.

■ Smithwick devoted the bulk of his brief and his oral argument to his contention that § 43.04 is unconstitutionally vague because the term "prostitute" is not specifically defined. He argues that "prostitute" does not have a plain and ordinary meaning, "nor a meaning so well known as to be similarly understood by a person of normal intelligence."[1]

The Court of Criminal Appeals has had many occasions to rule on the constitutionality of § 43.04, and has specifically upheld § 43.04 in the face of an argument that the term "prostitution enterprise" is vague and ambiguous. *See, e.g., Ringer v. State,* 577 S.W.2d 711, 714 (Tex.Cr.App.1979); *Floyd v. State, supra; Woods v. State,* 573 S.W. 2d 207, 219 (Tex.Cr.App.1978). In *Floyd,* the Court stated that the phrase "uses two or more prostitutes" is not vague, indefinite or ambiguous. The court went on to conclude that likewise, the word "uses" is not confusing and ambiguous, saying that within the context of § 43.04, "uses" is capable of only one meaning: "[b]oth common logic and the rules of grammar dictate that a prostitution enterprise that *uses* prostitutes necessarily *uses* them for prostitution." 575 S.W.2d 21 at 24. (emphasis added).

■ The Court of Criminal Appeals' reasoning includes the notion that "prostitute" is itself a term with a plain and ordinary meaning. Accordingly, we hold that within the context of § 43.04, the term prostitute is capable of only one meaning—a person who engages in prostitution.[2]

We overrule all of Smithwick's points of error and affirm the judgment of the trial court.

---

1. A penal statute may be void for vagueness when it either forbids or requires the doing of an act in terms so vague that men of common intelligence must guess as to its meaning and differ as to its application. *Ex parte Chernosky,* 153 Tex.Cr.R. 52, 217 S.W.2d 673, 674 (1949). When faced with such a claim, a court may apply the standard rules of statutory construction—such as giving undefined words their plain and ordinary meaning—to clarify an arguably vague statute. *Floyd v. State, supra.* A statute is not unconstitutionally vague simply because its terms are not specifically defined. *Ahearn v. State,* 588 S.W.2d 327 (Tex.Cr.App. 1979).

2. "Prostitution" is defined at sections 43.01 and 43.02(a)(1) of the Penal Code. Prostitution has been known at least since the time of Judah and his daughter-in-law Tamar. According to the Old Testament, he "thought her to be a harlot because she had covered her face." After some initial bargaining as to cost and credit, he agreed to send her a kid from the flock, arranged to give her his signet ring and staff as security and then "came in unto her, and she conceived." Genesis 38:12 *et seq.; See also* the Mosaic Code which punished prostitutes with burning. Leviticus 19:29 and 21:9.