John Robert **ROBINSON**, Appellant,

v.

The **STATE** of Texas, Appellee.

Nos. 05–88–01116–CR, 05–88–01117–CR.

Court of Appeals of Texas,
Dallas.

Dec. 12, 1989.

Rehearing Denied Jan. 17, 1990.

Discretionary Review Granted
April 18, 1990.

Bruce Anton, Dallas, for appellant.

Donald G. Davis, Dallas, for appellee.

Before WHITHAM, BAKER and OVARD, JJ.

## OPINION

OVARD, Justice.

John Robert Robinson appeals his convictions of unlawful possession with intent to deliver an analogue of a controlled substance under article 4476–15, also known as the Texas Controlled Substances Act.[1]

---

1. All textual statutory references hereafter are to the Texas Controlled Substance Act, Tex.Rev. Civ.Stat.Ann. art. 4476–15 (Vernon Supp.1989).

Robinson received a five year sentence in each case, as well as fines of $1500 and $1250. Robinson, in three points of error, contends that section 3.10 of the Act is impermissibly vague and overbroad under both state and federal constitutions, that section 2.09 is an unconstitutional delegation of legislative authority to the judiciary under the state and federal constitutions, and that there is no evidence to support the finding that the drug Robinson possessed was an analogue of 3, 4–methylenedioxy amphetamine.[2] We affirm.

The case was submitted to the trial court on stipulated evidence, summarized as follows: Robinson was arrested by the Dallas Police Department outside a night club on February 19, 1988, after he sold a tablet of 3, 4–methylenedioxy ethamphetamine (MDEA or "Eve") to an undercover officer for $25; Robinson was observed selling tablets in plastic baggies to several other persons prior to his arrest; the analysis report by the Southwestern Institute of Forensic Sciences stated that the tablets were 3, 4–methylenedioxy ethamphetamine, an analogue of 3, 4–methylenedioxy amphetamine.

In his first point of error, Robinson argues that section 3.10 of the Act is impermissibly vague and overbroad under both the Texas and federal constitutions. Specifically, Robinson points to the language "substantially similar" used to describe "a controlled substance analogue" mentioned in section 3.10(a).[3] Robinson complains of the "definition" of the word "analogue" contained in section 3.10(a); however, the definition that Robinson objects to is actually contained in section 1.02(5)(A).

Robinson argues that the portion of section 3.10(a), which treats a substance with a chemical structure substantially similar to that of a controlled substance as illegal, is unconstitutionally vague. He argues that, without a more specific definition of "substantially similar," too much discretion is left to the prosecuting authorities to determine which substances are similar to controlled ones and which are not. Moreover, Robinson urges that a proper definition of "substantially similar," when referring to chemical substances, should address such variables as the degree of discrepancy in valences and atomic weights allowable in determining similarity, whether mirror images constitute a "similar structure," and whether atomic weight similarity is measured in absolute terms or by relative weight.

In addition to finding fault with the words "substantially similar," as used to describe structural analogues, Robinson finds difficulty with the definition of "analogue." Robinson claims that "analogue," is inadequately defined in section 3.10; however, Robinson's focus is misplaced because the words, "controlled substance analogue" are actually defined in sections 1.02(5)(A) and (B).[4] Nevertheless, Robin-

---

2. Robinson raised the same points of error in a civil forfeiture action commenced against him pursuant to sections 5.03 through 5.08 of the Act. *$1462.00 in U.S. Currency v. State*, 774 S.W.2d 17, 18 (Tex.App.—Dallas 1989, writ den.). The civil forfeiture prosecution resulted from the same set of facts out of which this unlawful possession action arises. Although we note that a drug forfeiture action is a civil proceeding having civil consequences and in the present case we address a criminal prosecution with criminal penalties, we consider the rationale and holding of the civil forfeiture opinion as very persuasive authority. *Id.* at 18–22.

3. Tex.Rev.Civ.Stat.Ann. art. 4476–15 § 3.10(a) (Vernon Supp.1989) specifically provides:

A controlled substance analogue, the chemical structure of which is *substantially similar* to the chemical structure of a controlled substance in Schedule I of this Act or Penalty Group I of this Act or which was specifically

designed to produce an effect *substantially similar* to, or greater than, the effect of a controlled substance in Schedule I of this Act or Penalty Group I of this Act, all or part of which is intended for human consumption, shall be treated for the purposes of this Act as a controlled substance in Penalty Group I of this Act. (Emphasis added).

4. We do not address the constitutionality or alleged definitional deficiencies of section 1.02(5)(B) concerning the *effects* of substances because the stipulated evidence and record only present evidence as to the structural similarity of Eve as compared to that of other controlled substances, and present no evidence concerning the similarity of the effects of Eve with those of other controlled substances. Furthermore, this Court cannot pass on the validity of any part of the Controlled Substance Act which is not shown to have been violated, nor can we decide constitutional issues on a broader basis than the

son contends that the Webster's Dictionary definition of "analogue," incompletely quoted in his brief, would be a more enlightening definition. Because of the alleged definitional deficiencies and ambiguity surrounding sections 1.02(5)(A) and 3.10(a) of the Act, Robinson concludes that the public is left to guess as to its criminal liability and that the statute encourages arbitrary and erratic arrests and convictions, rendering the statute void for vagueness. *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972).

■ Robinson contends that section 3.10(a) is both unconstitutionally overbroad and vague. We first address Robinson's overbreadth contention. This type of statutory attack is normally reserved for alleged First Amendment violations. *See, e.g., City of Houston v. Hill*, 482 U.S. 451, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987) (discussing facial invalidation of statutes based upon overbreadth); *Village of Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1981) (discussing prerequisites to overbreadth attacks); *Bynum v. State*, 767 S.W.2d 769, 772 (Tex.Crim.App.1989) (discussing applicability of overbreadth challenges). Because Robinson fails to show how section 3.10(a) inhibits or proscribes protected speech or conduct under the First Amendment, his contention that section 3.10(a) is unconstitutionally overbroad is without merit. *Bynum*, 767 S.W.2d at 773.

■ However, a vagueness challenge is applicable to all criminal laws, because crimes must be defined in advance to give individuals fair notice of what activities are forbidden, which is essential to due process. *See, e.g., Bynum*, 767 S.W.2d at 773; *Engelking v. State*, 750 S.W.2d 213, 215 (Tex.Crim.App.1988); *Earls v. State*, 707 S.W.2d 82, 86 (Tex.Crim.App.1986). The first inquiry, in focusing upon a due process fairness analysis, is whether the ordinary, law-abiding individual would have received sufficient information that his or her conduct risked violating a criminal law. *See, e.g., United States v. Cardiff*, 344 U.S.

record requires. *Threlkeld v. State*, 558 S.W.2d

174, 176, 73 S.Ct. 189, 190, 97 L.Ed. 200 (1952); *Bynum*, 767 S.W.2d at 773–74; *Ybarra v. State*, 762 S.W.2d 368, 369–70 (Tex.App.—San Antonio 1988, no pet.). Furthermore, because no First Amendment rights have been shown to have been violated, Robinson must show that the statute operates in an unconstitutional fashion as to *him*. Proof that the statute unconstitutionally harms others or is hypothetically unconstitutional is insufficient. *Village of Hoffman Estates*, 455 U.S. at 494–96, 102 S.Ct. at 1191–92; *Bynum*, 767 S.W.2d at 774.

■ The lack of specific definitions of words or phrases contained in statutes does not make the statutes unconstitutionally vague. *Engelking*, 750 S.W.2d at 215; *Tovar v. State*, 685 S.W.2d 707, 708 (Tex.App.—Dallas 1984, pet. ref'd). A statute is not unconstitutionally vague, if after the application of well-accepted canons of statutory construction, the statute can be given a clear meaning. *Bynum*, 767 S.W.2d at 774. Applying plain, ordinary, and well known meanings, as well as referring to dictionary definitions to construe statutory terms, are two such canons of statutory construction. *Floyd v. State*, 575 S.W.2d 21, 23 (Tex.Crim.App.1978), *appeal dism'd*, 442 U.S. 907, 99 S.Ct. 2817, 61 L.Ed.2d 272 (1979); *Smithwick v. State*, 762 S.W.2d 232, 234 (Tex.App.—Austin 1988, pet. ref'd).

■ The words "substantially" and "similar" are sufficiently defined in dictionaries and have such well-accepted meanings that their use singularly or in combination presents no claim that they are vague or indefinite. *Bynum*, 767 S.W.2d at 774; *Floyd*, 575 S.W.2d at 23. The word "analogue," though not used as much nor having such a well-accepted meaning as the words "substantially" or "similar," is also defined in dictionaries. In fact, Robinson relies upon a dictionary definition of "analogue," although incorrectly quoted in his brief, to support his argument that the term "analogue" is unconstitutionally vague. *$1462.00 in U.S. Currency v.*

472, 474 (Tex.Crim.App.1977).

*State,* 774 S.W.2d 17, 21 (Tex.App.—Dallas 1989, writ denied) (noting misquoted, misleading definition of analogue). Moreover, Robinson claims that a proper definition of "analogue" should include references to valences, atomic weights, mirror images, and absolute or relative atomic weights. We conclude that the definitions suggested by appellant would only confuse rather than aid the average, law-abiding citizen, without a chemistry degree, in determining which substances are analogues of controlled substances. *Briggs v. State,* 714 S.W.2d 36, 37–8 (Tex.App.—Dallas 1986), *vacated on other grounds,* 740 S.W.2d 803 (Tex.Crim.App.1987); *Pope v. State,* 667 S.W.2d 163, 165–66 (Tex.App.—Houston [14th Dist.] 1983, pet. ref'd), *cert. dism'd,* 469 U.S. 802, 105 S.Ct. 56, 83 L.Ed.2d 7 (1984). Furthermore, we conclude that the use of the terms "substantially," "similar," and "analogue" independently or in conjunction with each other in sections 1.02(5)(A) and 3.10(a) of the Act is not unconstitutionally vague or indefinite. Consequently, we hold that the use of those terms provided sufficient notice to Robinson that his possession of Eve was possession of an analogue of a controlled substance. *Mustard v. State,* 711 S.W.2d 71, 75 (Tex.App.—Dallas 1986, pet. ref'd), *cert. denied,* 484 U.S. 916, 108 S.Ct. 265, 98 L.Ed.2d 222 (1987).

Robinson argues that section 3.10(a) of the Act is unconstitutionally vague and overbroad. However, there are other provisions of Texas statutes and the Penal Code which are, arguably, equally vague or overbroad, if not more so. Specifically, Texas Penal Code section 1.07(a)(11)(B), defining "deadly weapon," states: " 'Deadly weapon' means: anything that in the manner of its use or intended use, is capable of causing death or serious bodily injury." TEX.PENAL CODE ANN. § 1.07(a)(11)(B) (Vernon 1974). This language is arguably equally vague if not more so than the language Robinson complains of in section 3.10(a) of the Act. Treating a compound with a substantially similar chemical structure to that of a listed, controlled substance as an analogue is probably an application of less vague language than treating a weapon as deadly which, by the manner of its use or intended use, is capable of causing death or serious bodily injury. Although our research has failed to disclose a case upholding a constitutional vagueness challenge to Texas Penal Code section 1.07(a)(11)(B), the absence of such a successful challenge together with the judicial deference given to the legislature in drafting statutes weighs in favor of the constitutionality of the deadly weapon definition.

Robinson also urges this Court to strike section 3.10(a) as unconstitutional because of the potential for prosecutorial abuse in treating certain substances as "substantially similar" to several controlled substances, each having different penalty ranges. This, Robinson points out, would give the prosecuting authorities unbridled discretion to choose the penalty range under which to indict. *Adley v. State,* 718 S.W.2d 682, 684–85 (Tex.Crim.App.1986). This argument assumes that a substance can be an analogue to more than one other substance; however, there is no evidence in the record to support this contention. To alleviate this deficiency in the record, Robinson urges this Court, solely in his oral argument and supplemental briefs, to take judicial notice of certain facts allegedly judicially noticed by another court. *See Grinspoon v. Drug Enforcement Admin.,* 828 F.2d 881 (1st Cir.1987). Specifically, Robinson urges this Court to judicially notice the fact that MDMA, a controlled substance, has twenty-eight known analogues, some legal, some illegal. *Id.* at 895. In *Grinspoon,* the court "discussed" one doctor's findings to that effect. *Id.* In our case, Robinson made no offer of proof as to the existence of other legal and illegal analogues of MDMA nor did he urge the trial court to judicially notice those facts.

The taking of judicial notice of certain adjudicative facts may be either discretionary or mandatory. TEX.R.CRIM. EVID. 201(c), (d) (Vernon Special Pamph. 1989). It is discretionary when the court, *sua sponte,* decides to exercise its statutory right to judicially notice certain facts. TEX.R.CRIM.EVID. 201(c) (Vernon Special Pamph.1989). It is mandatory when the court is presented with both a request to

exercise the right and the court is supplied with the necessary information. Tex.R. Crim.Evid. 201(d) (Vernon Special Pamphlet 1989). Robinson, solely in his oral argument, urges this Court to judicially notice matters allegedly noticed by another court as well as information contained in the Merck index. The Merck index, Robinson informs this Court, is an index containing various information on chemicals, chemical structures, and effects of chemical use. He analogizes this index to the Physician's Desk Reference, a well-accepted medical reference book. Even if what Robinson urges is true, this Court cannot judicially notice those facts under the mandatory provision because Robinson has failed to supply this Court with both a copy of the *Grinspoon* case and the Merck index. Therefore, Robinson has failed to satisfy the second prong of the provision which would make taking judicial notice mandatory. Tex.R.Crim.Evid. 201(d) (Vernon Special Pamph.1989). Furthermore, Robinson has failed to persuade this Court that the discretionary provision for taking judicial notice is applicable to the case under review. Tex.R.Crim.Evid. 201(c) (Vernon Special Pamph.1989).

Although appellate courts may take judicial notice for the first time on appeal, we conclude that the matter urged by Robinson does not mandate the application of the doctrine of judicial notice under our facts. *See City of Dallas v. Moreau,* 718 S.W.2d 776, 781 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.); Tex.R.Crim.Evid. 201(b)(1), (2) (Vernon Special Pamph.1989) (contains grounds for judicial recognition of adjudicative facts). Furthermore, to argue that valences, atomic weights, and molecular composition, used to describe analogues of suspected and controlled substances are matters of common knowledge is untenable. *City of Garland ex rel. Mayor v. Louton,* 683 S.W.2d 725, 726 (Tex.App.—Dallas 1984), *rev'd on other grounds,* 691 S.W.2d 603 (1985). Also, to argue that the contention that MDMA has twenty-eight known analogues, some legal, some illegal, is a fact readily ascertainable by reference to well-accepted publications, is a strained interpretation of the doctrine

as well. *See Penix v. State,* 748 S.W.2d 629, 630–31 (Tex.App.—Fort Worth 1988, no pet.) (failing to judicially notice records of another court not part of appellate record under review). *But see Fisher v. Westinghouse Credit Corp.,* 760 S.W.2d 802, 806 n. 5 (Tex.App.—Dallas 1988, no writ) (judicial notice of interest rate tables); Tex.R.Crim.Evid. 201(b)(2). Robinson's contention is without merit. Accordingly, point of error one is overruled.

Robinson claims in his second point of error that because a trial judge must hear evidence and evaluate the "effect" of a substance under section 3.10(a), the legislature has unconstitutionally delegated legislative authority, reserved in section 2.09 to the commissioner, to the judiciary. However, Robinson was not convicted on the grounds that the substance he possessed "... was specifically designed to produce an *effect* substantially similar to, or greater than, the *effect* of a controlled substance in Schedule I of this Act or Penalty Group I of this Act ..." Section 3.10(a) (emphasis added). Robinson was prosecuted under the portion of section 3.10(a) dealing with substantial similarity based upon chemical structure, *not* effects of suspected analogues. Robinson cannot complain of the constitutionality of a portion of a statute with which he was not prosecuted or convicted. *Threlkeld,* 558 S.W.2d at 474. We overrule point of error two.

■ In his third and final point of error, Robinson argues that there is no evidence to support the trial court's finding that 3, 4–methylenedioxy ethamphetamine (MDEA or Eve) is an analogue of 3, 4–methylenedioxy amphetamine (MDA). In assessing a "no evidence" contention, this Court as the reviewing court, must determine whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Butler v. State,* 769 S.W.2d 234, 239 (Tex.Crim.App.1989) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). The reviewing court's duty is not to weigh or reassess the evidence—that has already

been accomplished by the fact finder, who is in the best position to do so having viewed the witnesses, their demeanor and testimony at the trial level. *Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim.App. 1988) (quoting *Jackson*, 443 U.S. at 319–20, 99 S.Ct. at 2789–90). Rather, the reviewing court, with only the cold record before it, serves as a final due process safeguard of the rationality of the factfinder, resolving any testimonial inconsistencies in favor of the verdict. *Id.* at 867. If the reviewing court finds that the verdict is irrational or unsupported by more than a "mere modicum" of the evidence, the "no evidence" challenge must be sustained. *Id.*

The record reflects that Robinson was indicted by a grand jury in a true bill of indictment for possession of a substance which purportedly is an analogue of 3, 4–methylenedioxy amphetamine (MDA). The record further reveals that Robinson's own expert, Dr. Wimbish, in his deposition offered in support of Robinson's motion to dismiss the indictment, admits that MDEA or Eve is structurally similar to MDA and MDMA, both Schedule I controlled substances. In addition, Wimbish admits that MDEA or Eve, the drug Robinson possessed at the time of his arrest, is a structural analogue of MDMA. Robinson argues that because there is no evidence as to the relative valences or atomic weights of MDEA and MDA, and that there is no proof of the effect of MDEA, he should prevail on his "no evidence" challenge. We disagree.

First, we note that because of our discussion under point of error number one, we hold that proof of the relative valences or atomic weights of the two chemicals is not necessary. Second, Robinson contends that section 3.10(a) mandates a finding of *both* structural similarity and similarity in effects of the purported analogue and the controlled substance. However, a closer reading of section 3.10(a) reveals that the section is phrased in the disjunctive. In other words, a finding of structural similarity *or* similarity in effect satisfies the requirements of a controlled substance analogue. Section 3.10(a). Accordingly, viewing the evidence in the light most favorable

to the prosecution, *i.e.* that MDEA or Eve is an analogue of MDA, we hold that the verdict is supported by more than a "mere modicum" of the evidence. *Moreno*, 755 S.W.2d at 867. Robinson's third point of error is overruled.

We affirm the trial court's judgment.

WHITHAM, Justice, concurring.

I concur in the result. I write to express my view that on a different record it might be shown that a prosecutor's discretion to choose the penalty range under which to indict conflicts with the Court of Criminal Appeals decision in *Adley v. State*, 718 S.W.2d 682, 684–85 (Tex.Crim.App.1986). *See also Johnson v. State*, 695 S.W.2d 686, 687–92 (Tex.App.—Dallas 1985) (Whitham, J., concurring and dissenting), *rev'd*, 713 S.W.2d 347 (Tex.Crim.App.1986).