IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-1769-06, 1770-06





EDWIN GLEN BIGON, Appellant



v.



THE STATE OF TEXAS





ON APPELLANT'S & STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE THIRD COURT OF APPEALS


LAMPASAS COUNTY





 Meyers, J., delivered the opinion of the Court, in which Price,
Womack, Johnson, Keasler, Hervey, Holcomb, and Cochran, JJ., joined. 
Keller, P.J., filed a dissenting opinion.


O P I N I O N 



 In two separate indictments, (1) Appellant was indicted for the following offenses:
two counts of felony murder, with the underlying felony of driving while intoxicated with
a passenger under 15 years of age; two counts of intoxication manslaughter; and two
counts of manslaughter. (2) After a one-day bench trial, Appellant was convicted on all six
counts, and the judge sentenced him to 18 years' confinement for each count, to be served
concurrently. Appellant appealed the trial court's admission of expert testimony, medical
records, and test results. Appellant also challenged the legal and factual sufficiency of
the evidence supporting his convictions. The court of appeals affirmed the two
convictions for felony murder, but vacated the other four convictions on the unassigned
error of violation of double-jeopardy guarantees of the Eighth Amendment of the United
States Constitution. The court of appeals also held that the trial court did not err in
admitting the expert's testimony, the medical records, or test results, and held that the
evidence was legally and factually sufficient to support the convictions. Bigon v. State,
Nos. 03-05-00692-CR & 03-05-00693-CR, 2006 Tex. App. LEXIS 8756 (Tex. App. -
Austin Oct. 4, 2006)(mem. op., not designated for publication). We granted both
Appellant's and State's petitions for discretionary review. We affirm the decision of the
court of appeals.

FACTS

 Appellant was driving home from a trip with his 8-year-old son. At approximately
8:35 p.m., while cresting a hill, Appellant crossed the middle line of the roadway,
slamming head-on into an oncoming vehicle. Both Appellant and his son were injured
and two occupants of the other vehicle, the driver and her infant daughter, were
pronounced dead at the scene of the accident.

 Appellant and his son were airlifted to the hospital to receive treatment for their
injuries. At 9:58 p.m., Appellant's blood was drawn by the hospital for lab purposes, and
the hospital performed a serum blood analysis to determine the blood-alcohol
concentration. Based upon witness reports, (3) the officers responding to the accident scene
believed that Appellant's erratic driving had caused the accident. As a result, a second
blood sample was taken at approximately 11:35 p.m., at which time Appellant was
informed that he was under arrest. (4)

 Dr. Charles Mott, at the DPS laboratory, analyzed the second blood sample for
blood-alcohol content using whole-blood analysis. Serum blood analysis and whole-blood analysis report results use different terminology. Dr. Mott converted the results of
the hospital's serum blood analysis into whole-blood analysis terminology and performed
a retrograde extrapolation.COURT OF APPEALS

 In a memorandum opinion, the court of appeals affirmed the convictions for felony
murder, vacated the intoxication manslaughter and manslaughter convictions, and
overruled all of Appellant's grounds for appeal. Appellant argued six points of error in
his appeal, but did not raise the double-jeopardy issue. Although neither party argued this
error on appeal, the court of appeals determined that it could be raised for the first time on
appeal because it was apparent from the face of the record that the totality of Appellant's
convictions stemming from the two indictments constituted double jeopardy.

 Following our decision in Ex parte Ervin, the court held that there was a multiple-
punishments violation. 991 S.W.2d 804 (Tex. Crim. App. 1999). Because the offenses of
intoxication manslaughter and manslaughter involved the same victims, imposing
convictions for both violated the double-jeopardy clause. Id. at 817. The court decided
that since there was only one act alleged in the indictments that could support the
convictions on all three counts, Appellant could not be punished for all three offenses. 
The court determined that, in this case, felony murder is the same offense as intoxication
manslaughter and manslaughter for double-jeopardy purposes.

 To remedy the violation, the court applied the "most serious offense" test, set out
in Landers v. State, to decide which convictions to vacate. (5) 957 S.W.2d 558 (Tex. Crim.
App. 1997). Based on this test, the court of appeals reversed Appellant's convictions for
manslaughter and intoxication manslaughter and affirmed the convictions for felony
murder.

 The second issue that the court addressed was the trial court's denial of
Appellant's motion to quash the indictments. Appellant argued that his actions did not
constitute a charge of felony murder and that the indictments were flawed because the
State never alleged a culpable mental state. The court of appeals conducted a de novo
review of the sufficiency of the indictment. The court held that a felony murder charge
does not require proof of a culpable mental state because the underlying felony provides
the culpable mental state. In this case, the underlying felony was felony DWI for driving
while intoxicated in a public place with a passenger younger than 15 years of age. Tex.
Pen. Code Ann. §49.045. Because this statute clearly dispenses with a culpable mental
state, the court held that the felony murder charge also did not require a culpable mental
state and upheld the trial court's decision not to quash the indictments.

 Next, the court of appeals considered Appellant's argument that the evidence was
legally and factually insufficient to support the murder convictions. Appellant alleged
that the evidence was insufficient to show that he acted recklessly or that the act of hitting
the other vehicle head-on was "in furtherance" of the underlying felony. The court of
appeals stated that, under our holding in Johnson v. State, 4 S.W.3d 254, 258 (Tex. Crim.
App. 1999), "the primary concern of the 'course and furtherance' requirement" was the
merger of the offenses, which did not occur in this case. The court concluded that a fact-finder could rationally have found beyond a reasonable doubt that Appellant committed
an act clearly dangerous to human life in furtherance of felony DWI by driving a heavily
loaded SUV over the center line and into oncoming traffic.

 Finally, Appellant alleged that the trial court abused its discretion in admitting the
testimony of Dr. Charles Mott because the testimony was unreliable and did not meet the
standards set out in Mata v. State, 46 S.W.3d 902, 908-909 (Tex. Crim. App. 2001). The
court of appeals held that Dr. Mott explained retrograde extrapolation in a clear and
understandable manner, explained his testing methods in a straightforward way, clarified
which factors he did know about Appellant, and articulated the reasons for his assumption
that Appellant was in the elimination phase of alcohol consumption. For all of these
reasons, the court concluded that it was not an abuse of discretion to admit Dr. Mott's
testimony.

 Appellant's felony murder convictions were affirmed, and the other four
convictions were vacated. Both Appellant and the State filed a petition for discretionary
review, each requesting three grounds for review. We granted both petitions to consider
the following six grounds for review:

 Appellant's Grounds:

 1. Whether a felony murder conviction can be based upon an underlying felony
that expressly requires no culpable mental state.

 2. Whether the "act clearly dangerous to human life" has to be "in furtherance" of
the underlying felony in order to be convicted of felony murder.

 3. Whether Mata precludes the results of a retrograde extrapolation when a
testifying chemist assumes a defendant is in the elimination phase of alcohol consumption
at the time of the accident.

 State's Grounds:

 1. Whether the court of appeals erred by reversing Appellant's convictions for
double-jeopardy reasons without providing the parties an opportunity to brief the issue.

 2. Whether it is apparent from the face of the record, in this case, that Appellant's
convictions for both felony murder and either manslaughter or intoxication manslaughter
constitutes a violation of the multiple punishments branch of double-jeopardy protection.

 3. Whether a State's preference should be taken into account when deciding which
convictions to vacate due to a violation of due process.

DISCUSSION

Lack of a Culpable Mental State for a Felony Murder Conviction

 In his first ground for review, Appellant argues that the State failed to allege a
culpable mental state for felony murder, and the court of appeals erred in its decision that
the trial court did not err in refusing to quash the indictments. He contends that it goes
against the intent of the Legislature to say that a felony that expressly has no culpable
mental state may serve as the underlying felony in a felony murder conviction. This
Court has already addressed this issue in a recent case, Lomax v. State, 233 S.W.3d 302
(Tex. Crim. App. 2007). In Lomax, we held that the felony murder statute plainly
dispensed with a culpable mental state, and that a felony DWI, which also does not
require proof of a culpable mental state, may serve as the underlying felony. Id. 
Appellant has not presented a new argument that would warrant our reconsideration of
this issue.

Definition of "in furtherance" as Applied to "clearly dangerous act"

 In his second ground for review, Appellant argues that the court of appeals failed
to consider the plain language of the felony murder statute when determining if there was
sufficient evidence to show that the act clearly dangerous to human life was actually in
furtherance of felony DWI. Appellant points out that the Texas Penal Code does not
define the phrase "in furtherance," and under Pettijohn v. State, 782 S.W.2d 866, 868
(Tex. Crim. App. 1989), when a statutory term is not defined by the statute itself, it
should be construed according to the rules of grammar and common usage. Therefore, in
the jury instructions, the phrase "in furtherance" should be given the meaning "to
promote" or "to advance."

 Appellant relies upon Robinson v. State, 783 S.W.2d 648, 651 (Tex. App. - Dallas
1990, pet. granted), to argue that it is acceptable to employ the use of a dictionary and
apply the ordinary meaning of the words when construing a phrase. Appellant looked to
Black's Law Dictionary, in which the definition of "furtherance" is "the act of furthering,
helping forward, promotion, advancement, or progress." Black's Law Dictionary 466
(Abridged 6th Ed. 1991). Appellant states that if you apply this definition to the felony
murder statute, it means that the "clearly dangerous act" must advance or promote the
commission of the underlying felony, and that, in this case, the act of driving into
oncoming traffic did nothing to advance the commission of felony DWI and even halted
its commission. Appellant claims that the court of appeals is acting arbitrarily by
applying the plain language of the felony murder statute when it rejected his mens rea
argument, but not applying the plain meaning of "in furtherance." Appellant also
suggests that the court of appeals erred in its application of Johnson v. State because
Johnson considered whether the underlying felony merged with felony murder, which is
distinguishable from Appellant's argument.

 When examining the legal sufficiency of the evidence, appellate courts view the
evidence in the light most favorable to the verdict. If a rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt, then the evidence is
legally sufficient. Poindexter v. State, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005),
citing Jackson v. Virginia, 443 U.S. 307, 318-19, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979);
Geesa v. State, 820 S.W.2d 154, 159 (Tex. Crim. App. 1991). Appellant's indictment for
felony murder alleged that the "clearly dangerous act" was "driv[ing] a heavily loaded
Jeep towing a loaded trailer across the center stripe of a roadway into the oncoming lane
of travel." According to witness testimony, Appellant was seen driving into the
oncoming lane of travel several times before this action resulted in a collision. While we
acknowledge that Appellant did not raise the issue of merger that was considered in
Johnson, we disagree with his argument that driving into the other lane was not in
furtherance of driving while intoxicated. A fact-finder could rationally have found
beyond a reasonable doubt that Appellant committed an act clearly dangerous to human
life in furtherance of felony DWI. The court of appeals did not err in determining that
evidence was legally sufficient to support Appellant's felony murder conviction.

Admission of Dr. Mott's Testimony and the Mata Factors

 In his third ground for review, Appellant contends that the court erred in holding
that it was not an abuse of discretion to admit the testimony of Dr. Charles Mott. At trial,
Dr. Mott testified that, when he performed his retrograde extrapolation, he assumed that
the blood samples were taken when Appellant was in the elimination phase of alcohol
consumption. He also testified that he based this assumption upon an entry in a hospital
record stating that Appellant had said he last "ate or drank" at 7 p.m. and the accident
took place at approximately 8:30 p.m. Appellant argues that the assumption that he was
in the elimination phase of alcohol consumption was flawed and that, because of this
assumption, Dr. Mott failed to consider any of the factors set out in Mata v. State, 46
S.W.3d 902, 916 (Tex. Crim. App. 2001). To support the argument that Dr. Mott's
testimony was unreliable, Appellant argues that the result of his first blood test is not
reliable because Dr. Mott had to convert the results of the hospital's serum-blood
analysis, and because the blood sample was not taken until an hour and a half after the
accident. Dr. Mott tested a sample of blood serum to determine the blood-alcohol
concentration under a whole-blood analysis. In performing the retrograde extrapolation,
Dr. Mott converted the serum blood test result into a whole-blood calculation in order to
compare the two blood results. In order to do this, Dr. Mott used an average conversion
ratio. Appellant argues that this ratio is unreliable without knowing the individual
characteristics of Appellant.

 We review the judge's decision to admit this scientific evidence for an abuse of
discretion. Russeau v. State, 171 S.W.3d 871, 881 (Tex. Crim. App. 2005). Under an
abuse of discretion standard, an appellate court should not disturb the trial court's
decision if the ruling was within the zone of reasonable disagreement. Hinojosa v. State,
4 S.W.3d 240, 250-251 (Tex. Crim. App. 1999), citing Griffith v. State, 983 S.W.2d 282,
287 (Tex. Crim. App. 1998).

 The proponent of scientific evidence must show the court, by clear and convincing
evidence, that the evidence is reliable. To show reliability, three criteria must be met: (1)
the underlying theory is valid; (2) the technique applying said theory is valid; and (3) the
technique was properly applied on the occasion in question. Kelly v. State, 824 S.W.2d
568, 573 (Tex. Crim. App. 1992). Appellant claims that the technique was not properly
applied by Dr. Mott because he incorrectly assumed that Appellant was in the elimination
phase of alcohol absorption. The State correctly asserts that the trial court does not abuse
its discretion by allowing an expert to base testimony upon an assumption if there is a
factual basis for the assumption in the record. Dr. Mott based his assumption upon
medical records stating that Appellant said he last ate or drank approximately 90 minutes
prior to the accident. Although Appellant tried to undermine the reliability of this
timeline, the trial judge did not abuse his discretion by allowing testimony based upon
this assumption. The trial judge was in the best position to judge the credibility of the
witnesses, and his decision to trust the medical record and allow the testimony was not
unreasonable.

 As we explained in Mata, retrograde extrapolation is the estimation of someone's
blood-alcohol level at the time of driving by using a test result from a later time. 46
S.W.3d at 908. We also described the science behind retrograde extrapolation and
recognized that, though there is some disagreement in the scientific community,
retrograde extrapolation can be reliable when applied correctly. In Mata, we stated that
"the expert's ability to apply the science and explain it with clarity to the court is a
paramount consideration" and we also provided a list of factors a court should consider
when determining the reliability of a retrograde extrapolation. Id. at 916.

 Based on the assumption that Appellant was in the elimination phase, Dr. Mott
concluded that Appellant's blood-alcohol level was actually higher at the time of the
accident than it was at the time of the blood test. The assumption that Appellant was in
the elimination phase is bolstered by the fact that Appellant's blood-alcohol level was
lower in the second blood test than it was in the first blood test. However, Appellant
asserts that the results of the first blood test can not be relied on because Dr. Mott's
conversion of the results to whole-blood analysis was erroneous, and the first sample was
taken too long after the accident. Dr. Mott testified that serum sample results are
approximately eighteen percent higher than whole-blood results. It is a valid method to
reduce serum-blood results by 15-18% when converting to a whole-blood result, (6) but this
percentage can be affected by an individual characteristics. Appellant also conducted a
voir dire about this exact issue. The trial judge also heard Appellant's cross-examination
of Dr. Mott and his efforts to undermine the expert's testimony. Dr. Mott did not use a
conversion percentage that was outside of the acceptable range, and he explained why he
felt that the conversion was accurate. As to the argument that the blood sample was taken
too long after the accident to be reliable, research indicates that a blood test can be
reliable if taken within two hours of driving. (7) Therefore, the results of the first blood test
do, in fact, support the expert's assumption.

 Dr. Mott testified that his assumption that Appellant was in the elimination phase
disposed of his need to know many of Appellant's personal characteristics. As we
recognized in Mata, "if the State had more than one test, each test a reasonable length of
time apart, and the first test were conducted within a reasonable time from the time of the
offense, then an expert could potentially create a reliable estimate of the defendant's BAC
with limited knowledge of personal characteristics and behaviors." 46 S.W.2d at 916.

 In some cases, cross-examination could reveal the unreliability of an assumption
similar to the one in this case or the unreliability of the retrograde extrapolation based
upon such an assumption. However, based on the factors outlined in Mata, considering
that Dr. Mott clearly explained retrograde extrapolation to the court, clearly explained
how he calculated Appellant's blood alcohol level based upon his assumption, clearly
explained how he converted the serum-blood result to a whole-blood result, consistently
testified without contradicting himself, testified as to his years of experience with
retrograde extrapolation, as well as the underlying theory of the science and its
methodologies, it was not an abuse of discretion to admit his scientific testimony.

Double-jeopardy

A. Unassigned Error

 The State argues that the court of appeals erred when it decided that Appellant's
convictions violated the double-jeopardy clause without allowing the parties to brief the
issue. The State bases its argument on State v. Pena, 191 S.W.3d 133, 136 (Tex. Crim.
App. 2006), which said, "[M]any, if not most, of the types of error that would prompt sua
sponte appellate attention need not be assigned because the error involved constitutes an
obvious violation of established rules. Novel constitutional issues are a different matter." 
The State concedes that convictions for intoxication manslaughter and manslaughter
violate the double-jeopardy clause, and this is an "obvious violation of established rules." 
However, the State claims that it is a novel issue to determine if there are double-jeopardy
violations when a defendant is convicted of felony murder and either intoxication
manslaughter or manslaughter and that the court of appeals should have allowed the 
parties to brief this issue. The State also contends that the double-jeopardy issue has been
waived because there was no objection at trial and the face of the record has failed to
show a multiple punishments violation. See Gonzalez v. State, 8 S.W.3d 640 (Tex. Crim.
App. 2000). The State further argues that manslaughter and intoxication manslaughter
are not the same offense as felony murder for double-jeopardy purposes under a
Blockburger (8) analysis. Citing United States v. Dixon, 509 U.S. 688 (1993), which
eliminated the "same conduct" test, the State rejects the idea that, just because Appellant
engaged in only one "culpable act," he cannot be convicted of more than one offense. 
The State does not argue that there was no double-jeopardy violation, but rather that the
double-jeopardy violation was not obvious from the face of the record as is required when
an unassigned issue is addressed sua sponte-and without briefing-or when there is no
objection made at trial.

 Appellate courts have the jurisdiction and authority to review unassigned error. 
See Sanchez v. State, 209 S.W.3d 117, 120 (Tex. Crim. App. 2006); Wright v. State, 981
S.W.2d 197, 199 n. 2 (Tex. Crim. App. 1998). In the case of a double-jeopardy violation,
the issue may be addressed as an unassigned error when the violation is apparent from the
face of the record. Gonzalez v. State, 8 S.W.3d 640, 643 (Tex. Crim. App. 2000). In Ervin v. State, we stated that imposing convictions for both manslaughter and
intoxication manslaughter violated the double-jeopardy clause. 991 S.W.2d 804 (Tex. 
Crim. App. 1999). This violation is clear from the face of the record and the court of
appeals did not need to request briefing from the parties in order to decide this issue. The
State contends, though, that the court of appeals should have requested briefing before
deciding that the convictions for felony murder and manslaughter, and felony murder and
intoxication manslaughter violated double-jeopardy principles. While we have never
determined that double-jeopardy is always violated when one is convicted of these
specific offenses, double-jeopardy arguments are especially common in the context of
multiple homicide convictions. See id. (discussing the nationwide multitude of opinions
addressing double-jeopardy issues with more than one homicide conviction per victim.) 
Therefore, the court of appeals did not err in considering this unassigned issue without
further briefing from the parties.

B. Felony murder, Intoxication Manslaughter, and Manslaughter 

 The Fifth Amendment offers three different constitutional protections. First,
protection against a second prosecution for the same offense after acquittal. Second,
protection against a second prosecution for the same offense after conviction. Third,
protection against multiple punishments for the same offense. North Carolina v. Pearce,
395 U.S. 711, 717, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969), overruled on other grounds
by Alabama v. Smith, 490 U.S. 794, 109 S. Ct. 2201, 104 L. Ed. 2d 865 (1989); Ex parte
Cavazos, 203 S.W.3d 333, 336 (Tex. Crim. App. 2006). 

 This case involves the third category of protection provided by the Fifth 
Amendment. In Langs v. State, 183 S.W.3d 680 (Tex. Crim. App. 2006), we laid out the
two contexts in which a multiple punishments claim can arise:

 1. The lesser-included offense context, in which the same conduct is
punished twice; once for the basic conduct, and a second time for that same
conduct plus more (for example, attempted assault of Y and assault of Y;
assault of X and aggravated assault of X); and

 2. Punishing the same criminal act twice under two distinct statutes when
the legislature intended the conduct to be punished only once (for example,
causing a single death by committing both intoxication manslaughter and
manslaughter).

Id. at 685. 

 Our first task is to determine if intoxication manslaughter and felony murder
constitute the "same offense." When multiple punishments arise out of one trial, the
Blockburger test is the starting point in analyzing the two offenses. Under the
Blockburger test, two offenses are not the same if one requires proof of an element that
the other does not. It is obvious from the outset that, when comparing the two Texas
Penal Code statutes, the offenses are not the same. But in Texas, when resolving whether
two crimes are the same for double-jeopardy purposes, we focus on the elements alleged
in the charging instrument. See Parrish v. State, 869 S.W.2d 352, 354 (Tex. Crim. App.
1994). Under the cognate-pleadings approach adopted by this Court, double-jeopardy
challenges should be made even to offenses that have differing elements under
Blockburger, if the same "facts required" are alleged in the indictment. See Hall v. State,
225 S.W.3d 524 (Tex. Crim. App. 2007).

 In the first count of both indictments, the State charged Appellant with felony
murder. The indictments alleged the following elements: (1) Appellant committed a
felony other than manslaughter, (2) in the course of and in furtherance of committing the
felony, he committed an act clearly dangerous to human life, (3) that caused the death of
another. The indictment specified that the underlying felony was driving while
intoxicated with a child passenger, and the act clearly dangerous to human life was
driving a heavily loaded Jeep over the center line and into oncoming traffic, both of
which had to be established by the State. To prove the felony DWI, the State had to show
that Appellant was intoxicated while operating a motor vehicle in a public place and that
there was a passenger younger than 15 years of age in the car at the time.

 The second count of the indictment was intoxication-manslaughter and it contained
the following elements: (1) Appellant was intoxicated, (2) while operating a vehicle in a
public place, and (3) because of this intoxication caused the death of another. It is clear
that when comparing the two charges as indicted, and taking into account all of the
elements that the State must prove for these two charges, the two offenses are
substantially similar. The only fact not common between the two is that the State would
have to prove the defendant's intoxication, not just the operation of a vehicle, caused the
fatal result in the intoxication manslaughter charge. The two offenses are not the same
under a strict application of the Blockburger test, but the Blockburger test is a rule of
statutory construction and is not the exclusive test for determining if two offenses are the
same.

 In Ervin v. State, we laid out a non-exclusive list of factors to consider when
examining if two offenses are the same in the context of multiple punishment. These
factors included: whether offenses are in the same statutory section; whether the offenses
are phrased in the alternative; whether the offenses are named similarly; whether the
offenses have common punishment ranges; whether the offenses have a common focus;
whether the common focus tends to indicate a single instance of conduct; whether the
elements that differ between the two offenses can be considered the same under an
imputed theory of liability that would result in the offenses being considered the same
under Blockburger; and whether there is legislative history containing an articulation of
an intent to treat the offenses as the same or different for double-jeopardy purposes. 991
S.W.2d at 814. These factors are not exclusive, and the question ultimately is whether the
legislature intended to allow the same conduct to be punished under both of the offenses. 
Ervin v. State, 991 S.W.2d 804 (Tex. Crim. App. 1999), relying on Ball v. United States,
470 U.S. 856, 84 L. Ed. 2d 740, 105 S. Ct. 1668 (1985); Missouri v. Hunter, 459 U.S.
359, 74 L. Ed. 2d 535, 103 S. Ct. 673 (1983). 

 Felony murder and intoxication manslaughter are no longer in the same statutory
section, but they were until 1994. Prior to 1994, intoxication manslaughter was called
involuntary manslaughter by driving while intoxicated. (9) The offense was contained in the
same section as all of the homicide offenses and was considered an alternative way to 
commit manslaughter. In 1994, involuntary manslaughter by driving while intoxicated
was moved to the chapter that addresses intoxication offenses. The committee testimony
and the house and senate journals addressing the senate bill that made this change do not
mention the reasoning for moving the statute, but we have suggested that it was largely
for housekeeping purposes. Ervin, 991 S.W.2d. at 816. Despite the fact that intoxication
manslaughter was moved to the chapter regarding intoxication offenses, it is still an
offense that addresses homicide. As we held in Ervin, we cannot say that, by moving the
statute, the legislature intended to create a completely separate offense for double-jeopardy purposes. Id. Because the two offenses are distinct and in separate statutory
sections, they cannot be phrased in the alternative, therefore this factor is not applicable in
this case.

 Although intoxication manslaughter was moved to a different section of the Penal
Code, it kept the title of manslaughter, indicating that it is still considered a homicide. 
Felony murder and intoxication manslaughter are clearly similarly named. Murder and
manslaughter denote similar offenses that differ only in degree. As such, this factor
weighs in favor of the two offenses being considered the "same" in these circumstances. 

 The focus of the two offenses is the same: the death of an individual. Both
offenses are result oriented and punish one for causing the death of another, even if
engaging in the behavior that ultimately ended in death but was not intended to cause the
death. As we said in Ervin, the sameness of the result is an indication that the Legislature
did not intend to impose multiple punishments. Id. In conjunction with this factor is the
"allowable unit of prosecution," which is defined by the legislature and determines if one
course of conduct results in more than one offense. Ex parte Cavazos, 203 S.W.3d 333. 
Usually, analysis of an allowable unit of prosecution involves a situation in which two
offenses from the same statutory section are charged, but the spirit behind the principle is
fitting here. In Texas, the allowable unit of prosecution for an assaultive offense is one
unit per victim, which is evidence that the legislature did not intend for one to be
prosecuted for several homicides when there is only one victim. See id. (holding that
there can be only one burglary conviction for each unlawful entry, not one conviction per
complainant.) In this case, there were two victims, so each victim would constitute a
separate offense.

 The most important factor is if there is an indication in the legislative history that
the offenses should be treated the same for double-jeopardy purposes. To be clear, felony
murder and intoxication manslaughter are certainly not the same offense in all situations. 
What distinguishes this case is the way in which the State chose to indict Appellant and
the underlying felony in the felony murder charge. There is no legislative indication that
felony murder was meant to be treated the same as an intoxication-manslaughter offense,
but when the underlying felony is a felony DWI with a child passenger, it is hard to
fathom that the legislature intended for one drunk-driving accident to result in multiple
homicide convictions for each victim.

 In Ervin, we determined that manslaughter and intoxication manslaughter are the
same offense. Similarly, under the facts of this case, felony murder is the same as
intoxication manslaughter, and intoxication manslaughter is the same as manslaughter. 
Because the multiple convictions for the same conduct violate double-jeopardy, only one
of these convictions can be upheld.

Remedy for Double Jeopardy Violation

 The State's final ground for review hinges upon our determination regarding the
court of appeals' decision to consider the double-jeopardy issue as unassigned error. The
State argues that courts should take into account the prosecution's preference when
deciding which convictions to vacate when a multiple punishment violation occurs. The
State agrees that the court of appeals was correct in applying the "most serious offense"
test, and agrees that felony murder is the most serious offense. However, the State
believes that, while cases such as Landers and Ex parte Cavazos, 203 S.W.3d 333 (Tex.
Crim. App. 2006), attempted to lay out the factors to consider when deciding which
conviction to vacate, they failed to include an important factor: the discretion of the
prosecutor. The State asserts that prosecutors should be given a say as to which
convictions to vacate since they have discretion over which charges to bring against the
defendant. In this case, the State argues that a reasonable prosecutor might not have
chosen to prosecute Appellant for the most serious offense if he had known that the two
other charges would be dismissed. The State maintains that a reasonable prosecutor
might have looked to the future consequences Appellant would face if he were to be
convicted of another DWI offense. If the felony murder convictions are retained, then
Appellant could be charged with a misdemeanor DWI enhanced by a prior felony
conviction. The punishment range for this is a fine no greater than $4000, and a jail
sentence from 90 days to one year. Tex. Pen. Code Ann. §12.43(a). But if the
intoxication-manslaughter convictions are retained, Appellant could be charged with
felony DWI, a third-degree felony.

 When a defendant is subjected to multiple punishments for the same conduct, the
remedy is to affirm the conviction for the most serious offense and vacate the other
convictions. Ex parte Cavazos, 203 S.W.3d 333; Landers v. State, 957 S.W.2d 558. We
apply the "most serious offense" test to double-jeopardy violations because of the policy
reasons stated in Landers including that this test would eliminate arbitrary decisions
based upon the order of offenses in the charging instrument, that in most circumstances
the State would elect to retain the most serious conviction, and that public safety is
insured through the deterrent influence of penalties. Id. at 560, citing Ex parte Pena, 820
S.W.2d 806 (Tex. Crim. App. 1991). 

 We determined in Ex parte Cavazos that the most serious offense was the offense
in which the greatest sentence was assessed. 203 S.W.3d at 338 (overruling Landers to
the extent that it held that factors such as degree of felony, range of punishment, and
parole eligibility rules should be considered when determining the most serious offense.) 
In the present situation, the trial judge assessed 18 years' confinement, to be served
concurrently, for all six convictions. Therefore, we cannot look to only the sentence
imposed to determine which of these offenses is the most serious. The State urges that a
contingent order be issued to allow the prosecutor to determine which conviction to
retain. Although we recognize that not every prosecutor would elect to keep the most
serious offense in every case, the "most serious offense" test attempts to take into account
which conviction prosecutors would choose to retain, while also continuing to meet the
other policy considerations.

 Only because the sentences are identical do we have to look to another criteria for
determining which offense is the most serious. In this case, we look to the degree of
felony for each offense. While the sentences assessed for each of the convictions on this
case is the same, felony murder is a first-degree felony, while intoxication manslaughter
and manslaughter are second-degree felonies. As such, felony murder is clearly the most
serious offense and we affirm the court of appeals' decision to retain this conviction.

CONCLUSION

 Although the court of appeals did not have the benefit of our decision in Lomax v.
State, 233 S.W.3d 302, the court correctly determined that felony DWI can serve as the
underlying felony of a felony murder prosecution. We agree with the court of appeals
that the evidence was legally sufficient to show that Appellant's clearly dangerous act
was in furtherance of the underlying felony and that the trial court did not abuse its
discretion in admitting the expert testimony of Dr. Mott. Finally, the court of appeals did
not err in considering the unassigned error, and correctly determined that the felony
murder convictions be retained. We affirm the decisions of the court of appeals.


 Meyers, J.

Delivered: January 16, 2008


Publish
1. There were two victims, therefore, the State returned one indictment per victim.
2. Tex. Pen. Code Ann. §19.02(b)(3) and Tex. Pen. Code Ann. §49.045; Tex. Pen. Code
Ann. §49.08; Tex. Pen. Code Ann. §19.04, respectively.
3. A witness testified that he had observed Appellant driving ten to fifteen miles below the
speed limit and drifting from the road to the shoulder and across the middle line of traffic prior to
the accident.
4. A police officer must require a breath or blood sample if, at the time of the arrest, he
reasonably believes that the individual was intoxicated while operating a motor vehicle at the
time of the accident and that someone has died as a result of the accident. Tex. Transp. Code
Ann. §724.012(b)(3)(A). In this case, Appellant voluntarily provided the blood sample prior to
his arrest.
5. The court of appeals did not have the benefit of our decision in Ex parte Cavazos, 203
S.W.3d 333 (Tex. Crim. App. 2006), at the time of their opinion, so they correctly applied the
test set forth in Landers.
6. Winek, C.L. and Carfagna, M. Comparison of Plasma, Serum and Whole Blood
Ethanol Concentrations. J. Analytical Toxicology 11, 267-268, 1987.
7. Gullberg and McElroy, Comparing Roadside with Subsequent Breath Alcohol Analysis
and Their Relevance to the Issue of Retrograde Extrapolation, 47 Forensic Sci. Int'l 193 (1992).
8. Blockburger v. United States, 284 U.S. 299 (1932)
9. Former Tex. Pen. Code Ann. §19.05(a)(2) (Vernon 1993).